Erin **FULTON,** et al.,
**Plaintiffs-Appellants,**

v.

**PLUMBERS AND STEAMFITTERS,** et al., **Defendants-Appellees.**

John **OSBORN,** et al.,
**Plaintiffs-Appellants,**

v.

**PLUMBERS AND STEAMFITTERS,** et al., **Defendants-Appellees.**

**No. 81–3405.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 7, 1982.

Decided Dec. 28, 1982.

Gregory A. Beeler, Kennewick, Wash., for plaintiffs-appellants.

Hugh Hafer, Seattle, Wash., argued, for defendants-appellees; John Burns, Hafer, Cassidy & Price, Seattle, Wash., Michael E. de Grasse, Critchlow, Williams, Ryals & Schuster, Richland, Wash., on brief.

Before WRIGHT, TANG and CANBY, Circuit Judges.

TANG, Circuit Judge:

This appeal is from a district court dismissal of complaints filed by appellants in these consolidated actions for damages pursuant to section 303 of the Labor Management Relations Act, 29 U.S.C. § 187 (1976). The district court dismissed the complaints, holding that appellants lacked standing under section 303 to maintain the suit. We affirm.

## I. Background[1]

Appellants are employees of Guy F. Atkinson Company and Wright-Schuchart-Harbor, a joint venture engaged in various construction projects for the Washington

---

1. The factual statements are taken from the complaints filed by appellants in the district court. For purposes of reviewing an order of dismissal for lack of standing, we must accept as true all material allegations of the complaints and construe them in favor of the complaining parties. *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975).

Public Power Supply System on the Hanford Nuclear Reservation in Washington. Most of the appellants are carpenters who are members of the United Brotherhood of Carpenters and Joiners (hereinafter "Carpenter's Union"). The other appellants belong to other craft unions, including the Ironworkers, Laborers, Teamsters, and Operating Engineers.

Appellees are Plumbers and Steamfitters Union, Local No. 598, its business agent Ray McKnight, and the International Brotherhood of Electrical Workers, Local No. 112. The two appellee unions represent pipefitters and electricians employed at the Hanford construction site. None of the appellants are members of the appellee unions.

A dispute arose in 1979 between the Carpenter's Union and the appellee unions concerning certain work assignments at the Hanford construction site. The dispute was submitted to the AFL–CIO's Impartial Jurisdictional Disputes Board under procedures set forth in the AFL–CIO Constitution. In November 1979, the Board entered an award determining that part of the work at issue was within the Carpenter Union's work jurisdiction. The employer made its work assignments based upon the award.

In March 1980, the appellee unions submitted to the site employer a demand to reassign the disputed work from the carpenters to members of the appellee unions. Shortly afterward, members of the appellee unions destroyed work completed by the carpenters at the site and encouraged a strike and a site boycott. Because of these activities, the site employer suspended operations for ten days. All the employees at the site were laid off during the work suspension, resulting in a ten-day wage loss.

On March 25, 1980, appellants filed an action in federal district court against appellees under section 303 of the Labor Management Relations Act [hereinafter LMRA], 29 U.S.C. § 187 (1976).[2] The complaint alleged that appellee's actions constituted a violation of section 8(b)(4)(D) of the LMRA, 29 U.S.C. § 158(b)(4)(D) (1976)[3], and sought damages for the wages lost during the work suspensions. Appellants also petitioned for class certification.

Appellees answered with a general denial, and moved to dismiss the action on the ground that appellants lacked standing to sue under section 303. On April 24, 1981, the district court granted appellees' motion, holding that appellants lacked standing because: (1) appellant's wage loss was "incidental" and "secondary" to the alleged vio-

---

**2.** Section 303 provides:

> (a) It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 8(b)(4) of the National Labor Relations Act, as amended.
>
> (b) Whoever shall be injured in his business or property by reason or [of] any violation of subsection (a) may sue therefor in any district court of the United States subject to the limitations and provisions of section 301 hereof without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit.

29 U.S.C. § 187 (1976).

**3.** Appellees allegedly violated section 8(b)(4)(D), 29 U.S.C. § 158(b)(4)(D) (1976), which provides in relevant part:

> (b). It shall be an unfair labor practice for a labor organization or its agents . . .

> (4)(i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is . . .
>
> (D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work . . . .

lation of section 8(b)(4)(D); and (2) wages are not "business or property" within the meaning of section 303 and are therefore not recoverable under the section. The question of class certification was not reached. Appellants appeal the dismissal.

## II. *Discussion*

In this appeal we must decide whether employees of an enterprise injured by a union's violation of section 8(b)(4)(D) of the LMRA have standing under section 303 of the LMRA to maintain a suit for damages against the offending union. Section 303(b) of the LMRA provides that "[w]hoever shall be injured in his business or property by reason of" a union's violation of section 8(b)(4) of the LMRA has a federal cause of action to recover damages. Appellants argue that section 303 imposes no greater standing limitation than that imposed generally by article III of the United States Constitution. Relying principally on the statute's reference to "whoever", appellants maintain that any plaintiff suffering an actual loss or injury attributable to a union's violation of section 8(b)(4) has standing to pursue an action for damages under section 303.

The expansive interpretation urged by appellants overlooks the section 303 requirement that the injury must occur "by reason of" a section 8(b)(4) violation. We conclude that the "by reason of" language imposes standing limitations. We are drawn to this conclusion by comparisons to the operative effect of similar statutory language in the antitrust field, our analysis

of the statute's legislative history and by interpretations of section 303's standing requirements enunciated by courts in other circuits.

The language of section 303(b) of the LMRA is strikingly similar to that of section 4 of the Clayton Act, 15 U.S.C. § 15 (Supp. V 1981).[4] The similarity in language utilized by Congress in drafting the two sections has prompted this circuit to look to judicial interpretations of section 4 for guidance in construing section 303. *Mead v. Retail Clerks International Ass'n, Local 839,* 523 F.2d 1371, 1376 (9th Cir.1975). The "by reason of" phrase appearing in section 303 also appears in section 4. This circuit has interpreted the phrase to impose standing limitations in the section 4 antitrust context. *See, e.g., In re Multidistrict Vehicle Air Pollution M.D.L. No. 31,* 481 F.2d 122, 126 (9th Cir.), *cert. denied sub. nom.,* 414 U.S. 1045, 94 S.Ct. 551, 38 L.Ed.2d 336 (1973). Thus, it would seem appropriate to give a similar interpretation to the phrase in the context of the LMRA.

This conclusion follows not only from the similarity in the language of the two statutes but also from the legislative history of section 303. The legislative history surrounding the enactment of section 303 suggests that the similarity in language was intentional, and that Congress intended for courts to look to antitrust standing principles formulated under section 4 for guidance in interpreting the standing requirements embodied in section 303.[5] Moreover,

---

4. Section 4 of the Clayton Act provides:
   Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.
   15 U.S.C. § 15 (Supp. V 1981).

5. Section 303 was proposed and enacted as an alternative to subjecting unions to antitrust liability for secondary activity. *See* 93 Cong.Rec. 4834–4874 (1947) (debates over Senator Ball's proposal for antitrust sanctions and Senator

Taft's compromise proposal for actual damages); *Connell v. Plumbers & Steamfitters Local 100,* 421 U.S. 616, 634, 95 S.Ct. 1830, 1840, 44 L.Ed.2d 418 (1975); *Mead v. Retail Clerks International Ass'n Local No. 839,* 523 F.2d 1371, 1376 (9th Cir.1975). While this alternative legislation served to reduce the punitive impact of damage awards available under the antitrust laws, section 303, like section 4, serves both a compensatory and deterrent function. *See* 93 Cong.Rec. 4858 (1947) (Senator Taft commenting on the intended deterrent and remedial impact of § 303), *reprinted in* 2 NLRB, *Legislative History of the Labor Relations Act,* 1947, at 1371 (1948); *Jaden Electric v. IBEW, Local 211,* 508 F.Supp. 983, 987 (D.N.J.1981); *see generally* Comment, *Standing To Sue Under Section 303 Of The Labor Manage-*

a majority of the courts that have examined standing under section 303 have adopted standards formulated under section 4 of the Clayton Act. *See* Comment, *Standing to Sue Under Section 303 of the Labor Management Relations Act,* 45 N.Y.U.L. Rev. 539, 546, 549–51 (1970); Case Note, 43 Cin.L.Rev. 212, 215–16 (1974). For example, in *United Mine Workers, Dist. 19 v. Osborne Mining Co.,* 279 F.2d 716 (6th Cir.), *cert. denied,* 364 U.S. 881, 81 S.Ct. 169, 5 L.Ed.2d 103 (1960), the Sixth Circuit borrowed the "direct/remote injury" test from the antitrust context and employed that standard to determine section 303 standing.[6] *See also United Brick & Clay Workers v. Deena Artware,* 198 F.2d 637, 644 (6th Cir.), *cert. denied,* 344 U.S. 897, 73 S.Ct. 277, 97 L.Ed. 694 (1952) (analogy drawn to antitrust laws in context of standing determination under section 303); *Gilchrist v.*

*United Mine Workers,* 290 F.2d 36, 39 (6th Cir.), *cert. denied,* 368 U.S. 875, 82 S.Ct. 120, 7 L.Ed.2d 76 (1961) ("direct/indirect" test employed); *W.J. Milner & Co. v. International Brotherhood of Electrical Workers, Local 349,* 476 F.2d 8, 12 (5th Cir.1973) ("line of fire" test prevalently employed in antitrust context utilized in determining section 303 standing).

We therefore conclude that we should look to the standing principles we have developed under section 4 of the Clayton Act for guidance in interpreting section 303's standing requirements. We are not obliged, however, to follow blindly the results obtained in the antitrust context. Our application of the principles of standing developed under section 4 have been informed by the broad remedial policies the antitrust laws reflect and seek to serve. *See, e.g.,*

---

*ment Relations Act,* 45 N.Y.U.L.Rev. 539, 549–50 (1970). Given the close similarity in the terminology employed in section 4 and section 303, the fact that section 303 was enacted in lieu of applying antitrust sanctions for secondary activity, and the commonality of functions served by the two statutes, judicial construction of section 4 may have influenced how Congress viewed the operative effect of section 303. In the legislative debates leading to section 303(b)'s inclusion in the Senate version of the Taft-Hartley amendments, Senator Morse criticized the section's apparent breadth and challenged its proponents to "find another statute that has such sweeping power as is given in this bill to bring suits when there are secondary injuries and not primary injuries." 93 Cong. Rec. 4872 (1947), *reprinted in* 2 NLRB, *Legislative History of the Labor Management Relations Act,* 1947, at 1398 (1948). Senator Taft, the section's and bill's major sponsor, responded:

> The Senator asks for a parallel and I can give him one. Under the Sherman Act the same question of boycott damage is subject to a suit for damages and attorneys' fees. In this case we simply provide for the amount of the actual damages. But the parallel is exactly the same, only under the Sherman Act, if a group of businessmen put a small concern out of business, they are subject to a suit for damages. If a labor union does the same thing, why should it not be subject to a suit for damages?

*Id.* at 4872–4873.

This response indicates that the section's main sponsor anticipated that the courts would fashion standing limitations under section 303 comparable to the limitations courts created to lim-

it the broad language governing antitrust standing under section 4.

**6.** The principal problem associated with the "direct/ remote injury" test is that the standard is inherently imprecise and has consequently spawned a variety of approaches leading to results which are not easily reconciled. *See United Mine Workers, Dist. 19 v. Osborne Mining Co.,* 279 F.2d 716 (6th Cir.), *cert. denied,* 364 U.S. 881, 81 S.Ct. 169, 5 L.Ed.2d 103 (1960) (injuries sustained by a business which dealt with a primary or neutral employer are inherently "indirect"); *Gilchrist v. United Mine Workers,* 290 F.2d 36 (6th Cir.), *cert. denied,* 368 U.S. 875, 82 S.Ct. 120, 7 L.Ed.2d 76 (1961) (injury to a business contracting with primary employer is "direct" if a symbiotic economic relationship exists between the two businesses and the contractor's tangible property is damaged by the union's actions); *Pennsylvania Railroad Co. v. National Maritime Union,* 206 F.Supp. 797 (E.D.Pa.1962) (interpreting *Gilchrist* to require only a close economic relationship between the plaintiff and the primary or neutral employer); *Abbott v. Local 142, United Association of Journeymen,* 429 F.2d 786 (5th Cir.1970) (third party plaintiff has standing under section 303 where it is the alter ego of the primary or neutral employer); *W.J. Milner & Co. v. International Brotherhood of Electrical Workers, Local 349,* 476 F.2d 8 (5th Cir.1973) (third party has standing if in "direct line of fire" and injury "reasonably foreseeable" by union); *Sapp v. Drivers, Chauffeurs, and Helpers, Local 639,* 542 F.2d 224 (4th Cir.1976) (third party's injury direct where he was an "object" of the union's illegal activity).

*Ostrofe v. H.S. Crocker Co.,* 670 F.2d 1378, 1387 (9th Cir.1982). The regulatory scheme and objectives of the National Labor Relations Act are, however, fundamentally different from the scheme and purposes of the antitrust laws. Thus, while we may look to antitrust principles for general guidance, the policies reflected in the National Labor Relations Act must inform the standards' application under section 303. We proceed with this caveat in mind.

■ In our circuit, section 4 standing has been determined under the "target area" test. *See, e.g., In re Multidistrict Vehicle Air Pollution M.D.L. No. 31,* 481 F.2d at 127–30 (rejecting the "direct/remote injury" test and embracing the "target area" approach). The target area rule confers standing if the plaintiff was within the target area of the defendant's illegal practices and was not only "hit", but also "aimed at." *Karseal v. Richfield Oil Corp.,* 221 F.2d 358, 362 (9th Cir.1955). A plaintiff satisfies this standard by being "within the area of the economy which [defendants] reasonably could have or did foresee would be endangered by the breakdown of competitive conditions." *In re Western Liquid Asphalt Cases,* 487 F.2d 191, 199 (9th Cir. 1973), *cert. denied sub nom.,* 415 U.S. 919, 94 S.Ct. 1419, 39 L.Ed.2d 474 (1974). The key to meeting this burden is a demonstration that the plaintiff suffered the type of core injury that Congress sought to prevent by enacting the antitrust laws. *See Solinger v. A & M Records,* 586 F.2d 1304, 1311 (9th Cir.1978), *cert. denied,* 441 U.S. 908, 99 S.Ct. 1999, 60 L.Ed.2d 377 (1979). *See also* 2 Areeda & Turner, *Antitrust Law* ¶ 334d at 166 (1978). The Supreme Court recently refined these principles in *Blue Shield of Virginia v. McCready,* —— U.S. ——, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982). The court held that when "faced with a claim

that an injury is too remote from the alleged violation to warrant § 4 standing", a court must look to (1) the nexus between the injury and the statutory violation, and (2) the relationship of the injury alleged to the forms of injury that Congress sought to prevent or remedy by enacting the statute. *Id.* 102 S.Ct. at 2548.[7]

■ Applying the standards as refined by *McCready* and informed by the policies of the National Labor Relations Act, we conclude that appellants lack standing under section 303. This action arises from a work jurisdiction dispute. The principal object of appellee unions' illegal activities was to pressure the site employer to reassign work from the members of the Carpenter's Union to members of the appellee unions. Instead of acceding to this pressure, the employer responded by suspending operation and temporarily laying off workers. This consequence was not a "necessary and integral" aspect of the section 8(b)(4)(D) violation. The injury alleged is too remote from the alleged violation to warrant section 303 standing. Thus, the required nexus between the injury and the section 8(b)(4)(D) violation has not been established.

It is also apparent that the injury alleged is not reflective of Congress' core concerns in prohibiting the type of conduct engaged in by appellee unions. Section 303's legislative history reveals that Congress was principally concerned with the debilitating effect secondary activity and jurisdictional disputes have on farmers and small businesses. *See, e.g.,* 93 Cong.Rec. 4838 (1947) (remarks of Senator Ball), *reprinted in* 2 NLRB, *Legislative History of the Labor Management Relations Act, 1947,* at 1354 (1948); S.Rep. No. 105 on S. 1126, Supplemental Views, 80th Cong., 1st Sess. 54

**7.** In addition to the legislative history and case law suggesting that section 4 standing principles should guide our interpretation of section 303 standing, the circumstances compelling the Supreme Court to adopt the *McCready* test are equally present in the case before us. In determining the parameters of standing under section 303 we assume that Congress did not intend to allow every person tangentially affected

by a section 8(b)(4) violation to maintain an action for damages under section 303. *Cf. Blue Shield of Virginia v. McCready,* 102 S.Ct. at 2547–48. As in *McCready,* we are faced with a claim that an injury is too remote from the violation to warrant standing. We are also without any direct guidance from Congress as to the point beyond which liability should not extend. *Id.*

(1947), *reprinted in* 1 NLRB, *Legislative History of the Labor Management Relations Act, 1947,* at 460 (1948). We are unable to find any indication that Congress sought to extend the right of action afforded by section 303 to employees of an injured employer and we are unwilling to render such a broad interpretation of the statute.

The avowed purpose of the National Labor Relations Act is the promotion of industrial peace by the creation of stable collective bargaining relationships. 29 U.S.C. § 151 (1973). The imposition of unlimited liability would tend to subvert our national labor policy. If employees of an injured concern are permitted to sue, unions would become subject to liability to a potentially huge class of plaintiffs. The plaintiffs in this case sought to represent a class of nearly 1800 employees. The resultant financial burden may have a destabilizing effect upon the union and render it incapable of effective representation. Moreover, the threat of such liability may inhibit legitimate union activity, frustrating the exercise of rights granted by the National Labor Relations Act. In light of these considerations, we are not persuaded that extension of liability to the class of employees of an injured enterprise is reflective of the core concerns that Congress sought to address by the enactment of section 303.[8]

### III. *Conclusion*

Section 303 of the Labor Management Relations Act provides a remedy to "whoever" is injured "by reason of" a labor organization's violation of section 8(b)(4). We are asked to construe this statute to confer standing to sue to anyone who can demonstrate an injury. Having reviewed our precedents, the legislative history of section 303, and the policies of our national labor laws, we conclude that Congress did not intend to grant such a broad right of action. Appellants lack standing to pursue this action under section 303; the district court properly dismissed their complaints.[9]

**8.** Our conclusion that appellants lack standing to sue for damages under section 303 does not leave them without a remedy. Section 10(k) of the Labor Management Relations Act, 29 U.S.C. § 160(k) (1976) authorizes the NLRB to hear and determine work jurisdiction disputes upon the filing of an unfair labor practice charge under section 8(b)(4)(D), 29 U.S.C. § 158(b)(4)(D) (1976). This procedure provides an expedited review and affords substantial protection to employees caught up in such a controversy.

**9.** Section 303 permits recovery for injuries to "business or property." Appellees urge us to interpret this phrase to include only commercial interests or enterprises and to exclude loss of wages. We have heretofore not been called upon to determine the parameters of the "business or property" phrase contained in section 303. The identical phrase appears, however, in section 4 of the Clayton Act, 15 U.S.C. § 15 (Supp. V 1981) and it may be proper for us to look to judicial interpretations of the section 4 phrase for guidance in construing the phrase in the context of section 303. In *Ostrofe v. H.S. Crocker Co.,* 670 F.2d 1378 (1982), we held that an employee has standing to sue for damages incurred as a result of his discharge for his refusal to participate in effectuating an antitrust conspiracy. *Id.* at 1385. Although we did not expressly discuss the "business or property" limitation, it was implicit in our holding that the loss of employment in that context was within the "business or property" concept. Contrary results have been reached by other circuits on this issue. *Compare Daily v. Quality School Plan Inc.,* 380 F.2d 484 (5th Cir.1967) (loss of employment constitutes injury to business or property); *Nichols v. Spencer International Press, Inc.,* 371 F.2d 332 (7th Cir.1967) (terminated employee injured in his business or property) *with Reibert v. Atlantic Richfield Co.,* 471 F.2d 727 (10th Cir.), *cert. denied,* 411 U.S. 938, 93 S.Ct. 1900, 36 L.Ed.2d 399 (1973) (termination of employment not injury to business or property unless job constitutes commercial enterprise or venture). We note that recently the Supreme Court has implicitly given wide latitude to the business or property limitation in holding that a consumer of services has standing under section 4 of the Clayton Act to sue for harm incurred as a result of anticompetitive practices directed at the provider of those services. *Blue Shield of Virginia v. McCready,* —— U.S. ——, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982). Moreover, the Sixth Circuit apparently does not view loss of wages as outside the bounds of the section 303 business or property concept. *Wells v. International Union of Operating Engineers, Local 181,* 303 F.2d 73, 75 (6th Cir.1962). Nevertheless, we do not find it necessary to reach the merits of appellee's "business or property" argument since we have concluded that appellants lack standing on other grounds. Appellees also assert that the dismissal of the suit should be affirmed on the grounds that appellants failed to exhaust internal union remedies provided by article XX of the AFL–CIO Constitution, citing *Santos v. District Council of Carpenters,* 547

The judgment of the district court is AFFIRMED.

F.2d 197 (2d Cir.1977), *after remand,* 619 F.2d 963 (2d Cir.1980). Because we conclude that

the suit was properly dismissed for lack of standing, we need not reach this argument.