William STARKS et al.

v.

PERLOFF BROTHERS, INC. et al.

Civ. A. No. 83–5047.

United States District Court,
E.D. Pennsylvania.

April 25, 1984.

Oscar N. Gaskins, Philadelphia, Pa., for plaintiffs.

Ann Miller, Philadelphia, Pa., for Perloff.

Bernard Katz, Philadelphia, Pa., for Local 169.

James Katz, Haddonfield, N.J., for Local 676.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

This action is brought by sixty warehousemen, all of whom were employed until December, 1982 by defendant Perloff Brothers, Inc., a food distributor, at its warehouse at 7th Street and Packer Avenue in Philadelphia. At the time, the plaintiffs were represented under the terms of a collective bargaining agreement with Perloff by defendant Warehouse Employees Union Local 169. The plaintiffs allege that while the collective bargaining agreement between Perloff and Local 169 was in effect, defendant Truck Drivers & Helpers Union Local 676 forced Perloff to recognize and bargain with it as representative of the employees at 7th and Packer and that Perloff then "awarded the entire jurisdiction" of the 7th and Packer warehouse to Local 676, resulting in the plaintiffs' loss of seniority rights and employment. Local 676 had for many years represented warehousemen employed by Perloff's wholly-owned subsidiary Alfred Lowry & Brother, Inc. (Lowry), which operated a food distribution business in Camden, New Jersey.

The plaintiffs' claims against Local 169 and Perloff are based on § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. The plaintiffs allege that Perloff breached the collective bargaining agreement by recognizing Local 676 as the exclusive bargaining representative of the employees at 7th and Packer, and that Perloff made this decision because Local 169 breached its duty to "properly, adequately and fairly represent" the plaintiffs. The plaintiffs' claim against Local 676 is based on § 303 of the LMRA, 29 U.S.C. § 187, which provides a money damages remedy for a private party injured in his business or property by reason of violation of cer-

tain unfair labor practice provisions of the LMRA. The plaintiffs allege that Local 676 unlawfully threatened violence, strikes, and other unfair labor practice activity with the purpose of coercing and inducing Perloff to unlawfully breach its collective bargaining agreement with Local 169.

Locals 169 and 676 have moved to dismiss the complaint on the grounds that the complaint fails to state a cause of action and that the claims are barred by the statute of limitations. Local 676 also contends that the plaintiffs lack standing to pursue a § 303 claim. Rather than responding to the motions to dismiss, plaintiffs have requested leave to file an amended complaint, and have filed a copy of their proposed amended complaint. Local 169 has moved to dismiss the amended complaint, and Local 676 and Perloff have opposed the motion for leave to amend on the grounds that the proposed amended complaint fails to state a cause of action and is barred by the statute of limitations. The Court has considered the responses of Local 676 and Perloff, together with Local 676's earlier motion to dismiss, as motions to dismiss the amended complaint. The plaintiffs have responded to the statute of limitations contentions raised in these motions, but have not responded to the other contentions raised by the defendants.

On March 27, 1984, this case was assigned to this Judge as related to two prior cases, *Perloff Brothers, Inc. v. Teamsters Local Union No. 676 and Warehouse Employees Union Local No. 169*, (*Perloff v. Locals 169 and 676*), No. 83–1307, and *Arko v. Perloff Brothers, Inc., Local Union 169 and Local Union 676*, (*Arko*), No. 83–3782. All of these actions involve the labor consequences of a consolidation of operations by Perloff between December, 1982 and May, 1983. In December, 1982, Perloff sold certain assets, including residual inventory and power equipment, which it had used in its operations at the 7th and Packer facility. In January, 1983, Perloff purchased certain assets, including inventory and rolling stock, from Monarch Institutional Foods, Inc., which had operated a food distribution business out of a ware-house in northeast Philadelphia. Perloff then consolidated all of its operations, including those of Lowry, its Camden subsidiary, at the 7th and Packer warehouse. Following the consolidation, Perloff employed many fewer warehousemen than had been employed at the three warehouses before consolidation. Some of the other labor consequences of this consolidation, including claims by the former Lowry drivers and the former Monarch warehousemen concerning their seniority, have been discussed in the April 4, 1984 memoranda in *Arko* and in *Deal v. Local 500, Food Drivers, Helpers and Warehousemen Employees*, No. 83–4470.

In *Perloff v. Locals 169 and 676*, the first of the "Perloff cases" before this Court, Perloff sought an injunction restraining Locals 169 and 676 from interfering with its planned consolidation of operations. Perloff had previously filed an unfair labor practice charge against Local 676, alleging that 676 was violating § 8(b)(4)(D) of the NLRA, 29 U.S.C. § 158(b)(4)(D), by inducing strike activity and threatening and coercing Perloff with the object of forcing or requiring Perloff to assign the warehousing work at 7th and Packer to employees represented by 676. On March 4, 1983, the NLRB found that Perloff's charge lacked merit. The NLRB found that Local 676's threatened actions in refusing to load goods bound for other warehouses unless its members were promised work at the warehouse remaining after consolidation were taken "to protest the imminent loss of its members' jobs and to preserve bargaining unit work. Thus, the Union's actions did not give rise to a work assignment dispute within the meaning of Section 8(b)(4)(D)." The employer appealed this decision.

Perloff asserted before this Court that 676's strike threat was in violation of § 301 of the LMRA because it was inconsistent with its contractual duties to Perloff. On March 28, 1983, a temporary restraining order from this Court took effect enjoining Locals 169 and 676 from interfering with Perloff's operations at any of its warehous-

es or with the movement of any merchandise into the 7th and Packer facility. The Court also scheduled a hearing on Perloff's motion for a preliminary injunction. During the period the temporary restraining order was in effect, Perloff filed a motion alleging that Local 676 was in contempt of the order.

On April 11, 1983, following several conferences in chambers, the parties reached a settlement, which was placed on the record. In this settlement Locals 169 and 676, both affiliated with the Teamsters' Union, agreed to submit their dispute concerning which Local had jurisdiction over the 7th and Packer facility to Teamsters Joint Council No. 53 for binding resolution, with the Council to render its decision within two weeks. The parties agreed that there were to be no strikes, showdowns or similar activity pending the Joint Council's decision, that there would be no layoffs of any employees during the two week period, and that Perloff would not move any inventory out of the Camden facility in excess of what it needed to fill customers' orders. In effect, the parties agreed to maintain the *status quo* pending the outcome of the Joint Council's decision. Finally, the agreement stated that a hearing on Perloff's motion for a preliminary injunction and for contempt would proceed promptly if the Joint Council did not decide the dispute within two weeks.

On April 21, 1983 the Joint Council awarded jurisdiction to Local 676. Local 169 appealed to the International, which affirmed this decision on July 25, 1983. Pursuant to the settlement agreement between the parties, *Perloff v. Locals 676 and 169* was dismissed.

In evaluating the motions to dismiss, the Court must construe the allegations in the complaint along with the attached collective bargaining agreement in the light most favorable to the plaintiffs. *Rogin v. Bensalem Township*, 616 F.2d 680, 690, 695 (3d Cir.1980), *cert. denied,* 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981). The motion should be granted if "it appears beyond doubt that the plaintiff[s] can prove

no set of facts in support of [their] claim which would entitle them to relief." *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In deciding the present motions to dismiss, the Court has considered the allegations of both the original complaint and the amended complaint to determine if the plaintiffs have stated a cause of action against any of the defendants. Because the allegations of the complaint and the amended complaint are not sufficient to state a cause of action against any of the defendants, the motions to dismiss will be granted and this action dismissed.

The plaintiffs' claim against Local 676 is brought under § 303 of the LMRA, 29 U.S.C. § 187, and is based on the allegation that Local 676 unlawfully threatened Perloff with violence, strikes, and other unfair labor practices, thereby inducing Perloff to breach its collective bargaining agreement with Local 169 and resulting in the plaintiffs' loss of seniority and employment. Local 676 has responded that the plaintiffs lack standing to sue under § 303, citing *Fulton v. Plumbers & Steamfitters*, 695 F.2d 402 (9th Cir.1982), *cert. denied,* — U.S. ——, 104 S.Ct. 273, 78 L.Ed.2d 254 (1983), and has also contended that the claim is barred by the statute of limitations. For the reasons which follow, the Court agrees that the plaintiffs lack standing to pursue this action against Local 676, and thus does not reach the statute of limitations issue.

Section 303 of the LMRA provides:

(a) It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section [8(b)(4) of the NLRA, as amended].

(b) Whoever shall be injured in his business or property by reason of any violation of subsection (a) of this section may sue therefor in any district court of the United States subject to the limitations and provisions of [29 U.S.C. § 185] without respect to the amount in contro-

versy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit.

Section 8(b)(4) of the NLRA, 29 U.S.C. § 158(b)(4), provides that it shall be an unfair labor practice for a labor organization or its agents to engage in or induce a strike or concerted refusal to work, or otherwise restrain or coerce others with the objective of

> (D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work * * *.

Although the statute uses the word "whoever," courts have agreed that Congress intended some limitation on § 303 standing. *Fulton*, 695 F.2d at 405; *W.J. Milner & Co. v. IBEW, Local 349*, 476 F.2d 8, 10 (5th Cir.1973). As the Ninth Circuit stated in *Fulton*, to determine the proper limits of standing under § 303 a court must analyze Congress' intent in passing the statute, the role that § 303 plays in national labor policy and in the scheme of remedies provided by the NLRA, and the decisions construing the jurisdictional provision of the Clayton Act, 15 U.S.C. § 15, which is substantially similar to § 303(b). The Court is led by its analysis of these factors in this case to the conclusion that the plaintiffs should be denied standing under § 303.

Following its review of the legislative history of § 303, the Ninth Circuit concluded that Congress was principally concerned with protecting small businessmen and farmers from the debilitating effect of secondary activity. The Ninth Circuit was "unable to find any indication" that Congress sought to extend the § 303 remedy to the employees of an injured employer. *Fulton*, 695 F.2d at 407–08. The Supreme Court has noted that "the House Committee report on one of the proposals out of which these sections came recognized the necessity of enacting legislation to protect employers from being 'the helpless victims of quarrels that do not concern them at all.'" *NLRB v. Radio & Television Broadcast Engineers Union, Local 1212*, 364 U.S. 573, 580–81, 81 S.Ct. 330, 333, 5 L.Ed.2d 302 (1961). *See* Leslie, The Role of the NLRB and the Courts in Resolving Union Jurisdictional Disputes, 75 Col.L. Rev. 1470, 1480 & n. 42, 1493 (1975). (legislative history of the Act is "replete" with comments that the primary purpose of § 303 and § 8(b)(4) is to protect employers caught between competing unions). Recent decisions of the Supreme Court counsel caution in implying private remedies unless the plaintiff is a member of a class for whose "especial benefit" the statute was enacted or there is some indication in the legislative history or otherwise that Congress intended to create a remedy for persons in the plaintiff's position. *See United States v. FMC Corp.*, 717 F.2d 775, 780–82 (3d Cir.1983).

Allowing § 303 suits by employees after jurisdictional disputes have been resolved between the employer and the competing unions appears inconsistent with the policy of the NLRA with respect to jurisdictional disputes. In § 10(k) of the Act, 29 U.S.C. § 160(k), Congress devised a procedure to encourage prompt settlement of jurisdictional disputes and to allow the NLRB to hear and determine such disputes expeditiously. The Supreme Court has noted that § 10(k) "quite plainly emphasizes the belief of Congress that it is more important to industrial peace that jurisdictional disputes be settled permanently than it is that unfair labor practice sanctions for jurisdictional strikes be imposed on unions." *NLRB v. Radio & Television Broadcast Engineers*, 364 U.S. at 576–77, 81 S.Ct. at 333. Recognizing § 303 standing for employees could prolong jurisdictional disputes and increase the difficulty of settling them. In the present case, for example, the employer and the defendant unions have resolved the jurisdictional dispute by

agreeing to be bound by the decision of the Teamsters Joint Council; the plaintiffs seek to upset this settlement because they are dissatisfied with the Joint Council's decision. Allowing such a challenge would not be consistent with the Congressional policy to resolve jurisdictional disputes quickly and finally.

Analysis of the § 303 standing question in light of the caselaw under § 4 of the Clayton Act, 15 U.S.C. § 15, supports the conclusion that standing should be denied in this case. The Ninth Circuit in *Fulton* reached this conclusion relying on the Supreme Court's opinion in *Blue Shield of Virginia v. McCready,* 457 U.S. 465, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982). *Fulton,* 695 F.2d at 407. Since *Fulton* was decided, the Supreme Court has further refined its analysis of § 4 standing in *Associated General Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). In *Associated General Contractors,* the Supreme Court held that two labor organizations were properly denied standing to challenge an alleged conspiracy in which persons letting construction contracts were coerced into hiring non-union construction contractors. The plaintiffs had alleged harm as a result of the alleged violations and intent by the defendants to cause that harm. The Supreme Court set out a number of factors relevant to the standing determination, including whether the plaintiffs' injury is the type of injury about which Congress was concerned when it enacted the legislation, whether the asserted injury is the direct or the indirect result of the violation, whether there exists an identifiable class of victims other than the plaintiffs who would have a natural incentive to sue, and whether the damages sought would be easily determinable or highly speculative. 459 U.S. at 538–545, 103 S.Ct. at 909–12.

▮ The Court believes that the factors set forth in *Associated General Contractors* support the denial of standing in the present case. First, as stated above, Congress was primarily concerned with injury to the business or property of employers when it enacted § 303 and § 8(b)(4)(D) of the NLRA; the legislative concern did not focus on injuries to the employees of the affected unions. Second, the employer in this case, as in almost all § 303 cases, is a victim with a fully adequate incentive to institute proceedings to attempt to stop alleged misconduct, and can seek relief from such activity either from a court or from the NLRB. Finally, the harm asserted by the plaintiffs in this case is not the direct or the necessary consequence of the challenged conduct. The plaintiffs have not alleged that the challenged action was carried on at their facility or that their work or property was destroyed by the direct actions of Local 676. *Cf. Gilchrist v. United Mine Workers,* 290 F.2d 36 (6th Cir.), *cert. denied,* 368 U.S. 875, 82 S.Ct. 120, 7 L.Ed.2d 76 (1961); *Pennsylvania Railroad Co. v. National Maritime Union,* 206 F.Supp. 797 (E.D.Pa.1962). Rather, according to the complaint, the alleged unlawful activity set into motion a series of events which led to submission of the jurisdictional dispute to the Joint Council which decided the issue adversely to the plaintiffs.

Although the Court has found cases from two other Circuits which appear to grant standing to employees under § 303, the Court does not find these cases persuasive in light of the discussion set forth above. Both of these cases, *Wells v. International Union of Operating Engineers, Local 181,* 303 F.2d 73 (6th Cir.1962), and *Sapp v. Drivers, Chauffeurs & Helpers, Local Union 639,* 542 F.2d 224 (4th Cir. 1976), were decided before the Supreme Court's most recent pronouncements on § 4 standing and neither discusses in any detail the purposes and policies of the NLRA. In addition, it is not clear from the *Sapp* opinion that Sapp was a mere employee, since an object of the union's activities in *Sapp* was stated to be "to replace Sapp with a trucker who employed union members." 542 F.2d at 225.

For all of the above reasons, the Court holds that the plaintiffs do not have stand-

ing in this case to bring suit under § 303 for the alleged unfair labor practices of Local 676. Because the plaintiffs lack standing, the motion of Local 676 to dismiss must be granted. The disposition of the standing issues makes it unnecessary to decide whether the plaintiff's alleged loss was "business or property" within the meaning of § 303(b) or whether the claim against Local 676 is barred by the statute of limitations.

The plaintiffs' claims against Local 169 and Perloff, brought pursuant to § 301 of the LMRA, 29 U.S.C. § 185, are based on the contention that Local 169's failure to properly and adequately represent the plaintiffs led to a breach of the collective bargaining agreement by Perloff. Specifically, the plaintiffs allege that Local 169 failed to exhaust grievance procedures under its contract with Perloff, and failed to present the "true factual situation" to Joint Council 53 and to the International in the appeal of the Joint Council's decision. The plaintiffs also allege that Local 169 misinformed them of the steps being taken to preserve their rights so that the plaintiffs could not take other steps to protect themselves. The complaint does not set forth what aspects of the "true factual situation" were not presented to the Joint Council and the International, or what misinformation was given to the plaintiffs by Local 169 concerning the steps being taken to preserve their rights.

As the Supreme Court has recently stated, *DelCostello v. International Brotherhood of Teamsters*, —— U.S. ——, ——, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983), in an employees' suit under § 301 the claims against the employer and the employees' own union are "inextricably interdependent." To prevail against either the company or the union, the plaintiffs must show both that there was a breach of the collective bargaining agreement and that the Union breached its duty of fair representation. *Id.* For the reasons stated below, the plaintiffs have failed to state a cause of action for breach of the duty of fair representation, and thus have not stated a claim against either the employer, Perloff, or Lo-

cal 169. Consequently, the motion of Local 169 to dismiss the amended complaint and the motion of Perloff in opposition to the plaintiff's request for leave to file an amended complaint, treated by the Court as a motion to dismiss the amended complaint, will be granted, and Perloff and Local 169 will be dismissed.

■ The duty of fair representation requires that a union exercise its discretion in representing the interest of all the employees of the bargaining unit in good faith and with honesty of purpose. The duty is breached if the union's acts are "arbitrary, discriminatory, or in bad faith." *Findley v. Jones Motor Freight*, 639 F.2d 953, 957 (3d Cir.1981). A claim for breach of the duty requires allegation of a bad faith motive on the part of the union; negligence or poor judgment will not suffice. *Id.* at 959; *Medlin v. Boeing Vertol Co.*, 620 F.2d 957, 961 (3d Cir.1980). "A mere allegation that a grievance 'should have been' processed through a grievance procedure does not satisfy this requirement." *Medlin*, 620 F.2d at 961.

■ In the present case, the plaintiffs have not alleged that the actions of the union were arbitrary, discriminatory, or in bad faith, but rather state that the union's efforts on their behalf were inadequate. These allegations are not sufficient to state a claim for breach of the duty of fair representation. The allegations against Local 169 in the complaint, interpreted in the light most favorable to the plaintiffs, are that the officials of the union lacked judgment or competence in connection with the pursuit of the jurisdictional dispute and informing the plaintiffs of the progress of the dispute. There is no allegation in the complaint that the union acted in any discriminatory or bad faith manner. The plaintiffs have not alleged that they were a part of a group against which the union or its leadership exhibited animus. The complaint and amended complaint set forth no allegation that Local 169 did not have a direct and vital interest in winning its case before the Joint Council. The plaintiffs

have failed to state a claim for breach of the duty of fair representation, and their § 301 claims against Perloff and Local 169 must, accordingly, be dismissed.

The Court has decided the motions to dismiss on the basis of the allegations of the complaint and the amended complaint, as required by Fed.R.Civ.P. 12(b)(6) and the cases construing it. The Court is aware, however, of the circumstances giving rise to the plaintiffs' complaint as a result of its involvement in the related cases, and does not hesitate to point out that the record in the related cases shows that the Joint Council is the body empowered by the Teamsters to resolve disputes such as that which took place between Locals 169 and 676. The transcript of the hearing before the Joint Council, filed as an exhibit in the *Deal* case, shows clearly that Local 169 presented its case vigorously before the Joint Council. Although the Court empathizes with the plaintiffs' disappointment and dissatisfaction with the Joint Council's decision, dissatisfaction alone does not support an assertion that the Union was guilty of arbitrary or bad faith conduct, or even of inadequate or unsatisfactory representation, in agreeing to go before the Joint Council. The Court is well aware that the consolidation of Perloff's operations has created a hardship for many warehousemen, and drivers, but on the basis of the allegations set forth in the complaint and the amended complaint the law does not permit this Court to entertain proceedings to restructure the consolidation.