760 F.2d 52
 119 L.R.R.M. (BNA) 2236, 102 Lab.Cas. P 11,453
 William STARKS, Solomon Scrivens, Thomas Sanders, Roy
Washel, Elester Moore, Charles Lukomski, Charles Wehrle,
George Nance, Leroy Evans, George Krumenacker, Frank
Krumenacker, Harry Neiley, John O'Neill, Louis Cassidy, John
Racek, John Walker, Milton Hurnton, Robert McClelland, Frank
Hall, Joseph Wood, Elmore Leigh, John Beech, William Beech,
Frederick Deal, Lonnie Leigh, Joseph Stuart, Leonard
Phillips, Robert Cross, Gerard Senechal, Melvin Slaughter,
David Stuart, Gene O'Mara, Carl McKnight, Michael Jaconski,
Frank Brown, James Landi, Edmond Czerniak, Richard Gunning,
Frank Pempkowki, Walter Wielgus, George Campbell, William
Substalae, Thomas Amorates, Robert Mosely, Julius Krajewski,
Robert Richardson, Mario Basile, George Levin, Emanuel
Rosey, Paul Hillias, Gregory Anthony, Anthony Gilbert,
William Fitzgerald, Henry Hicks, Robert Moses, Ronald Moore,
Richard Gusovius, John Van Natta, John Del Raso, Robert
Dilbeck, Appellants,
v.
PERLOFF BROTHERS, INC., Warehouse Employees Union Local 169,
Truck Drivers and Helpers Union Local 676, Appellees.
 No. 84-1288.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 5, 1985.
Decided April 25, 1985.
 
 Oscar N. Gaskins (argued), Oscar N. Gaskins & Associates, P.C., Philadelphia, Pa., for appellants.
 Ann Miller (argued), Spector Cohen Gadon & Rosen, P.C., Philadelphia, Pa., for appellee, Perloff Brothers, Inc.
 Samuel L. Spear (argued), Bernard N. Katz, Meranze, Katz, Spear & Wilderman, Philadelphia, Pa., for appellee, Local 169.
 James Katz (argued), Tomar, Parks, Seliger, Simonoff & Adourian, Haddonfield, N.J., for appellee, Local Union No. 676.
 Before SEITZ, GIBBONS, and SLOVITER, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 Plaintiffs brought this action in the district court against their erstwhile union, against their former employer, and against another union pursuant to Secs. 301 and 303 of the Labor Management Relations Act, 29 U.S.C. Secs. 185 & 187 (1982). The district court dismissed each of plaintiffs' claims for failure to state a claim upon which relief may be granted. Appellate jurisdiction exists pursuant to 28 U.S.C. Sec. 1291 (1982).
 
 I.
 
 2
 The following facts are undisputed. Plaintiffs are warehousemen who were members of defendant Warehouse Employees Union Local 169 ("Local 169") and who were employed by defendant Perloff Brothers, Inc. ("Perloff") at its Packer Avenue warehouse in Philadelphia. In December of 1982 Perloff began to consolidate its business operations, including those of its wholly-owned subsidiary Alfred Lowry & Brother, Inc. ("Lowry"), into its Packer Avenue warehouse. Lowry had been located in Camden, New Jersey, and had employed members of defendant Truck Drivers & Helpers Union Local 676 ("Local 676").
 
 
 3
 A jurisdictional labor dispute arose with respect to Perloff's consolidated operations at the Packer Avenue warehouse. Subsequently, an agreement was reached between Perloff, Local 169, and Local 676 to submit the dispute to binding resolution before Teamsters Joint Council No. 53 ("Joint Council"). The Joint Council awarded jurisdiction over the warehouse to Local 676, and that decision was affirmed by the International Brotherhood of Warehousemen and Teamsters ("International").
 
 
 4
 Plaintiffs allege that, prior to the agreement among the defendants to submit the dispute to binding resolution, Local 676 "threatened violence, illegal strikes [and] other unfair labor practices." Plaintiffs' First Amended Complaint, p 12. They allege that it did so "for the purpose of coercing and inducing [Perloff] to unlawfully breach [a collective bargaining] agreement with plaintiffs and deprive them of job positions, seniority and other benefits." Id. They further allege that Perloff, Local 676, and Local 169 "conspire[d] to violate the rights due plaintiffs under the agreement by agreeing among themselves to unlawfully terminate plaintiffs' employment and arbitrarily award jurisdiction to [Local] 676 in violation of the agreement, depriving [plaintiffs] of their rightful job positions, seniority and other benefits." Plaintiffs' First Amended Complaint, p 17.
 
 
 5
 Plaintiffs allege that Local 169 carried out the scheme to deprive them of their rights by:
 
 
 6
 (a) failing to exhaust grievance procedures under said contract between [Perloff] and [Local] 169;
 
 
 7
 (b) failing to present at a hearing before Teamsters Council No. 53 ... and in a subsequent appeal ... to the International Brotherhood of Warehousemen and Teamsters the true factual situation which would have established violations of the plaintiffs' rights and their entitlement to redress for said violation;
 
 
 8
 (c) failing to seek judicial and injunctive relief for said violation;
 
 
 9
 (d) failing to inform and deliberately misinforming plaintiffs of steps being taken to protect plaintiffs' rights, thereby depriving plaintiffs of the opportunity of pursuing other avenues to protect their rights.
 
 
 10
 Plaintiffs' First Amended Complaint, p 16. Finally, plaintiffs allege that Perloff breached the collective bargaining agreement by terminating them and denying them the seniority and benefits to which they were entitled by virtue of their collective bargaining agreement. Plaintiffs' First Amended Complaint, p 9.
 
 II. Section 301 Claims
 
 11
 The district court cited DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 164, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983), for the proposition that no section 301 recovery is available against either plaintiffs' union or their employer unless the union breached its duty of fair representation. The district court noted that a union breaches this duty if its acts are "arbitrary, discriminatory, or in bad faith." 586 F.Supp. 456, 462 (quoting Findley v. Jones Motor Freight, 639 F.2d 953, 957 (3d Cir.1981) (quoting Vaca v. Sipes, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967)). It then stated that "plaintiffs have not alleged that the actions of the union were arbitrary, discriminatory, or in bad faith, but rather state that the union's efforts on their behalf were inadequate." Id. The district court, therefore, dismissed plaintiffs' section 301 claims against both Local 169 and Perloff for failure to state a claim upon which relief may be granted.
 
 
 12
 As quoted above, however, plaintiffs did allege, among other things, that Local 169 conspired to violate their rights under the collective bargaining agreement, deliberately misinformed them of steps being taken to preserve their rights, and failed to present the true factual situation to the Teamsters Joint Council No. 53. In our view, bad faith is implicit in these allegations. An overly restrictive reading of a complaint is inconsistent with the mandate that "pleadings shall be so construed as to do substantial justice." Fed.R.Civ.P. 8(f); Richardson v. Pennsylvania Department of Health, 561 F.2d 489, 492 (3d Cir.1977) (pleadings should be construed liberally). Thus, the district court committed legal error in dismissing plaintiffs' section 301 claims for failure to allege bad faith. See Bogosian v. Gulf Oil Corp, 561 F.2d 434, 444-46 (3d Cir.1977), cert. denied, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978).
 
 
 13
 Plaintiffs also argue that, even assuming their union did not breach its duty of fair representation, DelCostello does not require dismissal of the claim against Perloff because there are "[n]o questions of exhausting remedies or the finality of binding arbitration." Plaintiffs' brief at 22. This argument was not addressed in the district court's opinion, and it is not clear whether it was presented to that court. Because this claim must be remanded, we will permit the district court to resolve this issue in the first instance. Furthermore, because it was not reached by the district court, we do not address defendants' alternative ground for affirmance that plaintiffs' claims were not timely filed.
 
 III. Section 303 Claim
 
 14
 The district court held that plaintiffs were without standing to bring a section 303(b) claim against Local 676. Since the issue is a legal one, our standard of review is plenary.
 
 Section 303 in pertinent part provides:
 
 15
 Whoever shall be injured in his business or property by reason or [sic] [an unfair labor practice under section 8(b)(4) of the National Labor Relations Act, 29 U.S.C. Sec. 158(b)(4) ] may sue therefor in any district court of the United States ... and shall recover the damages by him sustained and the cost of the suit.
 
 
 16
 29 U.S.C. Sec. 187(b) (1982).
 
 
 17
 Section 8(b)(4)(ii)(D) in relevant part recites:
 
 
 18
 It shall be an unfair labor practice ... to threaten, coerce, or restrain any person ... when ... an object thereof is ... forcing or requiring any employer to assign particular work to employees in a particular labor organization ... rather than to employees in another labor organization....
 
 
 19
 29 U.S.C. Sec. 158(b)(4)(ii)(D) (1982).
 
 
 20
 At first blush, the language of section 303 does not appear to impose a standing requirement. Still, "[e]very circuit considering the issue ... has flatly rejected [a] limitless interpretation of standing under section 303(b)." Charvet v. International Longshoremen's Association, 736 F.2d 1572, 1575 (D.C.Cir.1984). According to those courts, the requirement that any injury be "by reason of" the alleged unfair labor practice imposes a standing requirement. Id.; Fulton v. Plumbers and Steamfitters, 695 F.2d 402 (9th Cir.1982), cert. denied, --- U.S. ----, 104 S.Ct. 273, 78 L.Ed.2d 254 (1983). See W.J. Milner & Co. v. International Brotherhood of Electrical Workers, Local 349, 476 F.2d 8, 13 (5th Cir.1973) (Godbold, J., concurring).
 
 
 21
 We agree that the "by reason of" language in section 303 contemplates a standing requirement. We would have preferred to say that the alleged violation of section 8(b)(4) must be the legal cause of plaintiffs' injury. However, since the case law has formulated the issue in terms of standing, we will employ that terminology in the interest of uniformity. Cf. Bogosian, 561 F.2d at 447 n. 6. Under either formulation, the issue is whether plaintiffs have stated a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6).
 
 
 22
 As the District of Columbia Circuit has noted, "[t]he practical reasons justifying the view that section 303 imposes significant standing requirements are quite simple. Absent such requirements, unlimited liability ... might produce financial disaster for unions and inhibit the exercise of the right to strike," thus " 'subvert[ing] our national labor policy.' " Charvet, 736 F.2d at 1575 (quoting Milner, 476 F.2d at 12 and Fulton, 695 F.2d at 408). It is plain, therefore, "that some rational limiting standard was intended by Congress." Milner, 476 F.2d at 13 (Godbold, J., concurring).
 
 
 23
 Plaintiffs argue, however, that they satisfy the section 303 standing requirement. A number of circuits have addressed the broad issue of whether employees ever have standing to sue under section 303, and those courts have reached conflicting conclusions. E.g., Compare Wells v. International Union of Operating Engineers, Local 181, 303 F.2d 73 (6th Cir.1962) (employees have standing) with Fulton, 695 F.2d 402 (employees lack standing). The legislative history, at least to some degree, lends support to both views. On the one hand, it appears that Congress believed "the small employer, often with less than 50 employees, and the farmer or farm trucker" were the "main victims" of section 8(b)(4) violations. S.Rep. No. 105, 80th Cong., 1st Sess. 54 (1947) (supplemental views), reprinted in, 1 NLRB, Legislative History of the Labor Management Relations Act, 1947, at 460 (1948). On the other hand, in reference to section 8(b)(4) secondary boycotts, there is language indicating that Congress intended "to protect genuinely neutral employers and their employees." S.Rep. No. 187, 86th Cong., 1st Sess. 78, reprinted in 1959 U.S.Code Cong. & Ad.News, 2318, 2382.
 
 
 24
 An examination of the sequence of events alleged by plaintiffs, however, demonstrates that we need not resolve the broad question of whether employees ever have standing under section 303. The relevant allegations are as follows. Initially, in the course of a jurisdictional dispute, Local 676 engaged in conduct that violated section 8(b)(4). Subsequently, Local 676, Local 169, and Perloff, conspiring to arbitrarily assign jurisdiction over the plant to Local 676, settled the jurisdictional dispute. A hearing before the Joint Council and a subsequent appeal before the International were used by defendants as the vehicle to carry out their conspiracy. In these proceedings, defendant Local 169 deliberately failed to present the facts necessary to protect plaintiffs' rights. As a result, Local 676 received jurisdiction over the warehouse and plaintiffs were injured by the loss of their jobs, seniority, and other benefits.
 
 
 25
 We assume, without deciding, that employees may have section 303 standing under appropriate facts. In this case, however, plaintiffs' union entered into a settlement agreement to resolve the jurisdictional dispute that had given rise to Local 676's prior alleged violations of section 8(b)(4). That agreement operates as a superseding cause of any injury to plaintiffs that might otherwise have been caused, within the meaning of section 303, "by reason of" Local 676's alleged violations. Moreover, it is irrelevant for section 303 purposes that plaintiffs allege the agreement was really a conspiracy to deprive them of their rights. Assuming the truth of that allegation, plaintiffs' injury would be a result of the conspiracy and not "by reason of" the prior unfair labor practices.
 
 
 26
 Since we have joined several other circuits in holding that the "by reason of" language imposes standing requirements, and since plaintiffs' claim as a matter of law does not satisfy this statutory requirement, it follows that plaintiffs have no standing to sue Local 676 pursuant to section 303. In other words, Local 676's alleged conduct was not the legal cause of plaintiff's injury. In reaching this conclusion we find it unnecessary to determine what bearing, if any, cases construing section 4 of the Clayton Act, 15 U.S.C. Sec. 15 (1982) have on the interpretation of section 303. See Fulton, 695 F.2d at 405.
 
 
 27
 If plaintiffs did have standing to sue under section 303, the union that had arguably engaged in a violation of section 8(b)(4) in the course of a jurisdictional dispute would have little incentive thereafter to settle the dispute. This follows from the fact that, if a settlement were reached, the violating union would still be subject to section 303 liability. Any dissatisfied member of the competing union, by reaching back to the prior section 8(b)(4) violation, could recover from the violating union for injuries sustained as a consequence of the settlement. Such a result would be inconsistent with the general intent of Congress to promote industrial peace. Cf. NLRB v. Radio and Television Broadcast Engineers, Local 1212, 364 U.S. 573, 577, 81 S.Ct. 330, 333, 56 L.Ed.2d 302 (1961).
 
 
 28
 Plaintiffs argue, in the alternative, that section 301 provides a basis for its claim against Local 676. However, Local 676 contends in its brief that this argument was not presented to the district court, and plaintiffs do not challenge that contention. Thus, we decline to consider this argument on appeal. See Toyota Industrial Trucks U.S.A., Inc. v. Citizens National Bank of Evans City, 611 F.2d 465, 470 (3d Cir.1979).[1]
 
 
 29
 The judgment of the district court will be vacated insofar as it holds that plaintiffs failed to state section 301 claims against Local 169 and Perloff. It will be affirmed insofar as it dismisses plaintiffs' claim against Local 676 for failure to state a claim upon which relief may be granted. The case will be remanded for proceedings consistent with this opinion.
 
 GIBBONS, Circuit Judge, concurring:
 
 30
 I join in the judgment of the court. I write separately, however, to disassociate myself from any approving reference to the analysis made by the court which decided Fulton v. Plumbers and Steamfitters, 695 F.2d 402 (9th Cir.1982). The district court, relying on Fulton, concluded that employees of the target of a secondary boycott could never have standing to sue under section 303 of the Labor Management Relations Act, 29 U.S.C. Sec. 187 (1982), even if those employees could show an injury, separate from that of their employer, proximately caused by the violation. The Fulton court reasoned that the standing doctrines developed under section 4 of the Clayton Act, 15 U.S.C. Sec. 15 (1982), should apply under the similarly-worded section 303, and that standing should be afforded only when the plaintiff is a member of a class for whose especial benefit the statute was enacted. It suggested that the secondary boycott provisions of the Labor Management Relations Act were enacted solely for the protection of farmers and small businesses, not of their employees.
 
 
 31
 The Fulton approach to section 303 standing is entirely too mechanical. It is, moreover, inconsistent with the third circuit caselaw interpreting section 4 of the Clayton Act. See International Association of Heat & Frost Insulators and Asbestos Workers v. United Contractors Association, 483 F.2d 384, 397-98 (3d Cir.1973) (Union members who can prove injury separate from that of their employer may recover under Clayton Act), amended, 494 F.2d 1353 (3d Cir.1974); Bravman v. Bassett Furniture Industries, 552 F.2d 90, 99 (3d Cir.1977) (manufacturer's sales representative may seek Clayton Act recovery on account of restraints in distribution). Permitting employees to recover for illegal secondary activity if they can prove lost wages proximately caused by that activity involves no problem of duplicate recovery. Their employer obviously will not be permitted to recover wages which it did not pay, and the employees will not be permitted to recover profits lost by the employer. Compare, e.g., Illinois Brick Co. v. Illinois, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977) (limiting Clayton Act standing to direct purchasers, not ultimate consumers, to avoid problems of duplicate recovery). Moreover there can be instances, and this is one, where the activity complained of will not proximately cause any injury to an employer. In such a situation the employees may be the victims with the largest incentive to sue to vindicate the policies of the statute.
 
 
 32
 I agree, however, that in this case the complaint fails to state a claim upon which relief can be granted under section 303. That is so because, as Judge Seitz points out, the injury complained of was not proximately caused by the allegedly illegal secondary activity. Under both section 303 of the Labor Management Relations Act and section 4 of the Clayton Act, a plaintiff seeking money damages must satisfy traditional tort law standards of proof of injury. See Associated General Contractors v. California State Council of Carpenters, 459 U.S. 519, 529-35, 103 S.Ct. 897, 904-07, 74 L.Ed.2d 723 (1983). It does not advance the inquiry to couch proximate cause analysis in terms of standing. Indeed that slippery term is frequently used as a means of stating a result while refraining from making the analysis required to justify it.
 
 
 
 [1]
 Judge Sloviter joins this opinion, finding nothing inconsistent in the concurring opinion of Judge Gibbons