Frank SANTOS et al., Appellants,

v.

DISTRICT COUNCIL OF NEW YORK CITY AND VICINITY OF UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL–CIO, Appellee.

No. 64, Docket 76–7168.

United States Court of Appeals, Second Circuit.

Argued Oct. 22, 1976.

Decided Jan. 3, 1977.

Burton H. Hall, New York City, for appellants.

Robert G. Kuhbach, New York City (Daniel F. O'Connell, Breed, Abbott & Morgan, New York City, of counsel), for appellee.

Before SMITH, OAKES and TIMBERS, Circuit Judges.

OAKES, Circuit Judge:

This case of first impression presents the issue whether members of one union may sue another union for failure to comply with an arbitral decree, made pursuant to a labor federation's constitutional provision pertaining to interunion jurisdictional disputes. The United States District Court for the Southern District of New York, Charles M. Metzner, Judge, granted summary judgment for the defendant union on the basis that, regardless of whether the plaintiffs had standing, the constitutional provision itself bars judicial enforcement of the arbitral award. No. 75 Civ. 4355 (S.D. N.Y. Mar. 11, 1976). We reverse and remand.

I.

Suit was brought by appellants, individual union members, on behalf of themselves and similarly situated members of the 27 local unions comprising Painters' District Council No. 9 of New York City (Painters' District Council). They seek enforcement of an arbitral award against appellee, District Council of New York City and Vicinity of United Brotherhood of Carpenters and Joiners of America (Carpenters' District Council). The award was made pursuant to Article XX of the Constitution of the AFL–CIO, the article governing settlement of internal disputes between AFL–CIO-affiliated unions. Both appellee and Painters' District Council are bound by the AFL–CIO Constitution through their respective parent-affiliates, the United Brotherhood of Carpenters and Joiners of America (Carpenters' Brotherhood) and the Brotherhood of Painters, Decorators and Paperhangers of America (Painters' Brotherhood).

Appellants are either employed or seeking employment as woodwork finishers. Prior to 1967, their union, Painters' District Council, had established collective bargaining relationships with 21 woodwork or furniture manufacturing shops in New York

City; the Carpenters' District Council represented woodwork finishers in 27 other shops. In 1967, when the Painters' District Council was unable to reach agreement with the Manufacturing Woodworkers Association of Greater New York (the Association) on a new collective bargaining contract, the Painters went on strike. During the strike, members of Carpenters' locals crossed the picket lines and took over the woodfinishing duties of the striking Painters. The Painters' strike terminated without an agreement, and, over the next two years, the two unions sought to settle their differences. Following another Painters' strike in 1969 and, it is alleged, renewed efforts by Carpenters' members to take over woodfinishing, the Painters' District Council, through its Brotherhood, filed a complaint with the AFL–CIO, alleging a violation of Section 3 of Article XX of the AFL–CIO Constitution. That section prohibits an affiliate, "by agreement or collusion with any employer or by the exercise of economic pressure," from seeking "to obtain work for its members as to which an established work relationship exists with any other affiliate, except with the consent of such affiliate." In September, 1969, an "impartial umpire" found under the Constitution's procedures that the Carpenters had violated this section with regard to 17 of the shops. The Carpenters could have appealed this determination to the AFL–CIO President and Executive Council. AFL–CIO Const. Art. XX, § 12. They did not do so.

■ Over the next several years, appellants made repeated efforts to have the Carpenters comply with the umpire's decision. Because the Painters' District Council provided little help to appellants in their enforcement efforts, they protested to the Painters' Brotherhood. They also wrote to AFL–CIO President George Meany, asking that the umpire's decision be enforced. Their Brotherhood did support their request in a separate letter to President Meany. The letters provoked some meetings between Painters' and Carpenters' representatives and an AFL–CIO official, but no action. Finally, in September, 1975—some five years after the umpire's decision—appellants filed the instant action, alleging that they had exhausted all internal remedies available to them. Jurisdiction is predicated on Section 301(a) of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185(a).[1]

## II.

■ We first consider appellee's claim that appellants lack standing to bring this action. The court below assumed standing *arguendo* and proceeded to consider the merits, a practice that must be disapproved. It is axiomatic that a court should not consider the merits of an action if the plaintiff cannot show some cognizable injury. *See Ashwander v. TVA*, 297 U.S. 288, 347–48, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, *J.*, concurring). *See also Warth v. Seldin*, 422 U.S. 490, 517–18, 95 S.Ct. 2197, 2215, 45 L.Ed.2d 343 (1975) ("The rules of standing . . . are threshold determinants of the propriety of judicial intervention.").

■ We believe that the plaintiffs here have sufficiently alleged injury from the failure of appellee to abide by the umpire's decision and that they "personally would benefit in a tangible way from the courts' intervention." *Id.* at 508, 95 S.Ct. at 2210. Were their suit to succeed, appellants would

---

1. LMRA § 301(a), 29 U.S.C. § 185(a), provides in pertinent part:

    Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

The AFL–CIO Constitution is a "contract between labor organizations" within the terms of § 301(a). *See Drywall Tapers, Local 1974 v. Operative Plasterers' International Association*, 537 F.2d 669, 672–73 (2d Cir. 1976), and authorities cited therein. Affected individual employees may sue for violation of such contracts. *See* note 3 *infra*.

regain, or at least have an opportunity to seek without the Carpenters' interference,[2] jobs presently held by Carpenters' members. The fact that appellants may be able to join a Carpenters' local and thereby perhaps obtain woodfinishing work may mitigate to some extent but by no means eliminates their injury; even if we assume they could obtain work in this way, there are likely to be, for appellants, a number of tangible differences, such as in seniority and dues, as well as perhaps some intangible differences, between being Carpenters' members and Painters' members. As the Supreme Court has recently made clear, moreover, LMRA "Section 301 contemplates suits by . . . individual employees as well as between unions and employers; and contrary to earlier indications § 301 suits encompass those seeking to vindicate 'uniquely personal' rights of employees . . . ." *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976).

Appellee does not dispute these points, but instead argues that the only party to suffer cognizable damage was the Painters' District Council, since Article XX of the AFL–CIO Constitution is an interunion document intended to preserve peace among AFL–CIO affiliates, and since appellants are not parties to the Constitution. This argument is based upon language in this court's decision in *Abrams v. Carrier Corp.,*

434 F.2d 1234 (2d Cir. 1970), *cert. denied,* 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971). *Abrams* involved, in part, loss of a representation election by the union to which plaintiffs belonged. Plaintiffs alleged that the victorious union had violated an interunion agreement to the effect that one union would not contest another's representation. In denying standing to the plaintiffs to sue the other union, the court did note that they were not "signatories to the [interunion] Agreement" and that it "was not made for the[ir] benefit," *id.* at 1249, but, contrary to appellee's assertion, the *Abrams* court did not rely upon these facts. Rather, the court went on to consider, as a standing determination requires, whether the plaintiffs had made "the necessary allegations of demonstrable, particularized injury," *Warth v. Seldin, supra,* 422 U.S. at 508, 95 S.Ct. at 2210.[3] The *Abrams* court concluded that they had not, because, while their union "lost members, dues, assessments, and possibly prestige" when it lost the representation election, the plaintiffs had suffered no harm "except disappointment" at the election results, an "emotional" loss insufficient to establish standing, 434 F.2d at 1249–50.

The instant case is plainly distinguishable from *Abrams*. Appellants have not suffered mere "emotional disappointment"; they have lost their jobs and cannot obtain new ones in their trade, at least if they

---

**2.** Appellee alleges that, regardless of the interunion outcome, the Woodwork Manufacturers' Association has stated it will bargain only with the Carpenters. This does not make judicial intervention futile, however, since, if the Carpenters were ordered to relinquish woodfinishing jobs in the 17 shops that were the subject of the umpire's decision, a significant source of competition for the jobs appellants seek would be eliminated. The Association would then have to either hire nonunion, perhaps unskilled labor in the 17 shops or bargain with the Painters.

**3.** The suggestion that one must be a signatory to a contract in order to have standing to sue for its enforcement under § 301 is easily rejected. Not only is the statute written in the passive voice ("suits . . . may be brought"),

with no restrictions on who may file suit, *see* note 1 *supra,* but numerous cases have granted individuals standing to sue for enforcement of contracts to which they were not parties, *see, e. g., Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 561–62, 96 S.Ct. 1048, 47 L.Ed. 2d 231 (1976); *Vaca v. Sipes,* 386 U.S. 171, 183–87, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Smith v. Evening News Ass'n,* 371 U.S. 195, 199–200, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). These cases include the very case relied on by appellee, *Abrams v. Carrier Corp.,* 434 F.2d 1234, 1241–47 (2d Cir. 1970), *cert. denied,* 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971), which granted standing as to individual claims against the employer, based on an alleged breach of the union-employer agreement.

remain in their union, without court intervention. A more tangible harm is difficult to imagine. The harm, moreover, is directly related to appellee's alleged refusal to comply with the umpire's determination. We conclude, therefore, that appellants have standing to maintain this action.

### III.

Judge Metzner's grant of summary judgment for appellee was based upon his understanding of the AFL–CIO Constitution's provision barring resort to the courts for enforcement of determinations made under Article XX, a prohibition contained in § 20 of that Article.[4] Reasoning that "an employee who seeks to invoke the protections of the AFL–CIO Constitution is bound by the limitations it imposes," slip op. at 7, Judge Metzner relied on judicial statements to the effect that contractual remedies in the labor context can be made exclusive, "even to the point of making a § 301(a) suit unavailable," *Boone v. Armstrong Cork Co.,* 384 F.2d 285, 289 (5th Cir. 1967). He also noted the holding of *Miller v. Spector Freight Systems, Inc.,* 366 F.2d 92, 93 (1st Cir. 1966) (per curiam), that a person claiming rights under a contract "must take the entire contract." There are numerous other cases to the same effect. *See, e. g., United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 599, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Haynes v. United States Pipe & Foundry Co.,* 362 F.2d 414, 416–17 (5th Cir. 1966), and authorities cited therein.

All of the above cases, however, involved the question whether a court could *review* the award of an arbitrator, not whether it could *enforce* the award that was made. It is well established that a person who loses in a contractually-prescribed arbitration proceeding may not, absent some showing of bad faith, ask a court to redetermine the merits of his claim. *Hines v. Anchor Motor Freight Co., supra,* 424 U.S. at 562–67, 96 S.Ct. 1048; *see, e. g., Miller v. Spector Freight Systems, Inc., supra.* But it is equally well established that the victor in an arbitration proceeding may seek court enforcement of his award under LMRA § 301(a). *See, e. g., General Drivers, Local 89 v. Riss & Co.,* 372 U.S. 517, 519, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963) (per curiam); *White Motor Corp. v. UAW,* 491 F.2d 189, 190 (2d Cir. 1974) (per curiam); *Textile Workers Union v. Cone Mills Corp.,* 268 F.2d 920 (4th Cir.), *cert. denied,* 361 U.S. 886, 80 S.Ct. 157, 4 L.Ed.2d 121 (1959). Appellants, through their union, were the victors here, and all that they seek is judicial enforcement of the umpire's award.[5] They have not asked—and would have no reason to ask—for judicial review of the propriety of the award.

While there is therefore no general doctrine that a person desiring judicial enforcement of a contract's or constitution's terms must take the bitter with the sweet, it remains true that enforcement here would be directly contrary to the AFL–CIO Constitution's prohibition on "resort to court . . . to enforce any settlement or de-

---

**4.** AFL–CIO Const. Art. XX, § 20 provides in full:

> The provisions of this Article with respect to the settlement and determination of disputes of the nature described in this Article shall constitute the sole and exclusive method for settlement and determination of such dispute and the provisions of this Article with respect to the enforcement of such settlements and determinations shall constitute the sole and exclusive method for such enforcement. No affiliate shall resort to court or other legal proceedings to settle or determine any disputes of the nature described in

> this Article or to enforce any settlement or determination reached hereunder.

**5.** That the proceedings herein may not have been termed "arbitration" is irrelevant. In addition to bearing all the indicia of arbitration, *compare Carrier Air Conditioning Co. v. NLRB,* 547 F.2d 1178, 1192–1193 (2d Cir. 1976), (proceeding with no resemblance to genuine arbitration), the proceedings before the umpire were "the parties' chosen instrument for the definitive settlement of grievances under the [Constitution]," *General Drivers, Local 89 v. Riss & Co.,* 372 U.S. 517, 519, 83 S.Ct. 789, 791, 9 L.Ed.2d 918 (1963) (per curiam).

termination reached hereunder." AFL–CIO Const. Art. XX, § 20; *see* note 4 *supra.* Appellants argue that this prohibition should be ignored by the courts without even the "verbal curtsy" of formal recognition, as apparently has occurred in certain union discipline cases where union members had resorted to the courts before exhausting internal union appeals, *see* Summers, *The Law of Union Discipline: What the Courts Do in Fact,* 70 Yale L.J. 175, 181 (1960). Alternatively they ask us to declare the prohibition void as against public policy, as was done in certain early non-labor cases involving restrictions on resort to the courts, *see, e. g., Guaranty Trust & Safe Deposit Co. v. Green Cove Springs & M. R. R.,* 139 U.S. 137, 143, 11 S.Ct. 512, 35 L.Ed. 116 (1891) (mortgage provision that mode of sale therein was to be exclusive mode); *McCullough v. Clinch-Mitchell Construction Co.,* 71 F.2d 17, 21 (8th Cir.) (contractual provision to submit all disputes to arbitration and waive all court remedies), *cert. denied,* 293 U.S. 582, 55 S.Ct. 96, 79 L.Ed. 678 (1934); *Brown v. Supreme Court, Independent Order of Foresters,* 176 N.Y. 132, 137–38, 68 N.E. 145, 146 (1903) (provisions of association's constitution and by-laws requiring that expelled member exhaust internal appeals before bringing court action). Both of these suggestions, however, are overly simplistic, in that they fail to take account of the substantive congressional policies underlying LMRA § 301, as to which see generally *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 452–56, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

In *Hines v. Anchor Motor Freight, Inc., supra,* the Supreme Court recently noted § 301's "strong policy favoring judicial enforcement of [labor] contracts," 424 U.S. at 562, 96 S.Ct. at 1055, which "reflects the interest of Congress in promoting 'a higher degree of responsibility upon the parties to such agreements . . .,' " *id.* at 561, 96 S.Ct. at 1055, *quoting* S.Rep.No.105, 80th Cong., 1st Sess. 17 (1947). At the same time, the Court also recognized that contractual provisions requiring nonjudicial settlement of disputes "are among those which are to be enforced under § 301." 424 U.S. at 562, 96 S.Ct. at 1056. *See also id., citing* 29 U.S.C. § 173(d) (desirable that grievances be settled "by a method agreed upon by the parties"). Finally , the *Hines* Court held that nonjudicial settlement provisions need not be enforced when the union, whose cooperation is essential to the effective functioning of the nonjudicial procedures, fails to meet its duty of fair representation of the employee's interests:

> The union's breach of duty relieves the employee of an express or implied requirement that disputes be settled through contractual grievance procedures; if it seriously undermines the integrity of the [nonjudicial] process the union's breach also removes the bar of the finality provisions of the contract.

424 U.S. at 567, 96 S.Ct. at 1058.

We believe that the instant case, like *Hines,* presents a situation in which allegations of a union's breach of duty are sufficiently serious to enable a court action, filed in the face of a nonjudicial settlement requirement, to survive a motion for summary judgment. Appellants' complaint, while it does not in terms allege a breach of duty, does allege facts from which it can readily be inferred that the Painters' District Council, the AFL–CIO, and, to a lesser extent, the Painters' Brotherhood failed to exercise "complete good faith and honesty of purpose in the exercise of [their] discretion." *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953), *quoted in Hines v. Anchor Motor Freight, Inc., supra,* 424 U.S. at 564, 96 S.Ct. 1048. Nothing in the affidavits filed with the district court contradicts these allegations. It is clear, moreover, that the AFL–CIO Constitution's provision restricting resort to the courts presupposes that the union which succeeds before the umpire will seek sanctions against the non-complying union and that the AFL–CIO will, after investigation, at least use its best efforts to

impose appropriate sanctions.[6] According to appellants' uncontradicted allegations, the Painters have at best acted half-heartedly on appellants' behalf, and the response of the AFL–CIO has been equally deficient in terms of its adherence to the letter and spirit of Article XX. With the critical presuppositions of the AFL–CIO constitutional provision thus undermined, we would be blinding ourselves to reality were we to hold that Article XX's restriction on resort to the courts must be enforced regardless of the surrounding circumstances. *See Hines v. Anchor Motor Freight, Inc., supra,* 424 U.S. at 571, 96 S.Ct. at 1060. ("Congress has put its blessing on private dispute settlement arrangements . . . but it was anticipated, we are sure, that the contractual machinery would operate within some minimum levels of integrity").

■ It might be argued that, in view of the breach of duty by those charged with representing their interests, appellants' remedy should lie against the Painters and the AFL–CIO, rather than against the Carpenters. This argument, however, was made and rejected in *Hines, supra,* where the defendant employer had adhered to the contractual grievance procedures and claimed that the contractual provision making arbitration final and binding should be given effect as to it, with the employee relegated to suing only his own union. *Id.* at 567–71, 96 S.Ct. 1048. The Supreme Court stated: "[W]e cannot believe that Congress intended to foreclose the employee from his § 301 remedy otherwise available against the employer if the contractual processes have been seriously flawed by the union's breach of its duty . . .." *Id.* at 570, 96 S.Ct. at 1059. The Court also noted that the employer, by discharging the employees, "played its part in precipitating this dispute." *Id.* at 569, 96 S.Ct. at 1059. *See also id.* at 566, 96 S.Ct. at 1058 *quoting Vaca v. Sipes,* 386 U.S. 171, 185, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) (" 'the employer has committed a wrongful discharge in breach of th[e] agreement, a breach which could be remedied through the grievance process . . . were it not for the union's breach of its statutory duty of fair representation . . ..' "). Here the Carpenters, by their alleged refusal to comply with the umpire's decision, have precipitated the instant dispute, and appellants' remedy *for noncompliance* within the terms of the AFL–CIO Constitution was frustrated by the alleged breach of duty by the Painters and the AFL–CIO. Like the Supreme Court in *Hines* and *Vaca,* we refuse to allow allegedly wrongful conduct by appellants' own union to serve as a " 'shield' " protecting the initial alleged wrongdoer, the Carpenters' District Council here, from " 'the natural consequences' " of its breach

---

**6.** AFL–CIO Const. Art. XX, §§ 14–15 provide:

Sec. 14. Any affected affiliate may file a complaint with the President that another affiliate has not complied with an effective determination of the Impartial Umpire or of the Executive Council on appeal. Upon receipt of such a complaint the President shall immediately convene a meeting of the subcommittee of the Executive Council referred to above. If noncompliance with the determination is found at such meeting, notice of such non-compliance shall be issued by the President to each affiliated national or international union and department.

Sec. 15. Immediately upon the issuance of such notification, the following shall apply:

(1) The non-complying affiliate shall not be entitled to file any complaint or appear in a complaining capacity in any proceeding under this Article until such non-compliance is remedied or excused as provided in Section 16;

(2) The Federation shall, upon request, supply every appropriate assistance and aid to any organization resisting the action determined to be in violation of this Article;

(3) The Federation shall appropriately publicize the fact that the affiliate is not in compliance with the Constitution;

(4) No affiliate shall support or render assistance to the action determined to be in violation of this Article.

In addition, the Executive Council is authorized, in its discretion, to:

(1) Deny to such an affiliate the use of any or all of the services or facilities of the Federation;

(2) Deny to such an affiliate any protection under any of the provisions or policy determinations of the Federation;

(3) Apply any other authority vested in the Executive Council under this Constitution.

of the relevant agreement, the AFL–CIO Constitution. 424 U.S. at 566–67, 96 S.Ct. 1048 *quoting* 386 U.S. at 186, 87 S.Ct. 903.[7]

Judgment reversed and cause remanded.[8]

UNITED STATES of America, Appellee,

v.

**Joseph M. McCRANE, Jr., Appellant.**

**No. 75–1643.**

United States Court of Appeals, Third Circuit.

Argued Oct. 31, 1975.

Submitted upon Remand from Supreme Court Aug. 2, 1976.

Decided Nov. 22, 1976.

Edwin P. Rome, Thomas A. Bergstrom, Jerome R. Richter, Blank, Rome, Klaus & Comisky, Philadelphia, Pa., for appellant; J. Robert Lunney, Lunney & Crocco, New York City, of counsel.

7. Appellants have not brought suit against their own union or the AFL–CIO, but such a suit, while often coupled with a suit against the initial alleged wrongdoer (usually an employer), *see, e. g., Hines v. Anchor Motor Freight, Inc., supra; Steinman v. Spector Freight System, Inc.,* 441 F.2d 599 (2d Cir. 1971), is plainly not a prerequisite to suit against the initial wrongdoer. This court has indicated that an employee whose union is "derelict in its duty" has the option of "su[ing] for that dereliction or proceed[ing] against his employer for the latter's breach of the collective bargaining agreement." *Id.* at 603, *citing Vaca v. Sipes, supra,* 386 U.S. at 184–87, 87 S.Ct. 903.

8. Nothing we have said herein is to be construed as implying any opinion as to whether the Carpenters are in compliance with the AFL–CIO Constitution or whether the Painters or the AFL–CIO have breached any duty owed appellants. We merely hold that appellants should be given an opportunity to prove their

John J. Barry, Bruce I. Goldstein, Mary-Anne T. Desmond, Asst. U.S. Attys., Jonathan L. Goldstein, U.S. Atty., Newark, N.J., for appellee.

Before GIBBONS, Circuit Judge, MARKEY,* Chief Judge of Court of Customs and Patent Appeals, and WEIS, Circuit Judge.

---

allegations. *See Steinman v. Spector Freight System, Inc., supra,* 441 F.2d at 604. Other than the jurisdictional question, moreover, *see* note 1 *supra,* we are not passing upon any

other defenses to appellants' suit that may be raised by appellee. *See* 441 F.2d at 604 n. 9.