**UNITED DERRICKMEN AND RIGGERS ASSOC. LOCAL UNION NO. 197 OF THE INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND ORNAMENTAL WORKERS, ALF–CIO, Plaintiff,**

v.

**LOCAL NO. 1 BRICKLAYERS AND ALLIED CRAFTSMAN, AFL— CIO, Defendant.**

No. 98–CV–5902 (ILG).

United States District Court, E.D. New York.

Sept. 14, 2000.

Carol L. O'Rourke Pennington, Stephanie Maureen Suarez, Colleran O'Hara & Mills, Garden City, NY, for Plaintiff.

Seymour M. Waldman, Vladeck Waldman Elias & Engelhard, New York City, for Defendant.

## MEMORANDUM & ORDER

GLASSER, District Judge.

### SUMMARY

This action was commenced on September 30, 1998, by the plaintiff, United Derrickmen and Riggers Association, Local Union No. 197 of the International Association of Bridge, Structural and Ornamental Iron Workers, AFL—CIO ("Local 197" or "plaintiff") against Local No. 1, Bricklayers and Allied Craftworkers, AFL—CIO ("Local 1" or "defendant") for breach of contract. Specifically, Local 197 alleges that Local 1 has breached the Constitutions of the Building and Construction Trades Department of the AFL—CIO ("BCTD") and the Building and Construction Trades Council of Greater New York ("BCTC"). Additionally, Local 197 alleges that Local 1 has breached the plans created by the BCTD and the BCTC for the voluntary resolution of union jurisdictional disputes in the construction industry. Plaintiff also alleges two state law claims for tortious interference with prospective business and contractual relations, claims which the defendant argues are preempted by the National Labor Relations Act.

Local 197 moves for partial summary judgment in its favor pursuant to Fed. R.Civ.P. 56 on the First through Fourth claims for relief alleged in the Complaint, which constitute its breach of contract claims. It seeks to enjoin Local 1 from refusing to honor its contractual obligations and ordering Local 1 to submit to the BCTD and BCTC jurisdictional dispute plans, and to reaffiliate with the BCTC, from which Local 1 withdrew in November 1996. Local 1 has cross moved

for summary judgment to dismiss the plaintiff's suit in its entirety.

### STATEMENT OF FACTS

#### I. THE RELEVANT ENTITIES

Plaintiff Local 197 and defendant Local 1 are both unincorporated associations operating as labor organizations in the greater New York Metropolitan area representing employees in the construction industry. Defendant Local 1 is affiliated with the Bricklayers and Allied Craftworkers, AFL—CIO. Plaintiff Local 197 is affiliated with the Bridge, Structural and Ornamental Iron Workers, AFL—CIO.

The Building and Construction Trades Council of Greater New York ("BCTC") is an association of affiliated construction trades unions with craft jurisdiction within the City of New York. The Building and Construction Trades Department of the AFL—CIO ("BCTD") is an association of construction trades unions affiliated with the AFL—CIO on a national and international basis.

The BCTD, in conjunction with several multi-employer associations or unionized contractors employing members of the AFL—CIO affiliated construction unions, has designed the "Plan for the Settlement of Jurisdictional Disputes in the Construction Industry" ("the National Plan"). The National Plan provides a procedure for the resolution of jurisdictional disputes between affiliated national and international unions and their local construction unions affiliated with the BCTD.

The BCTC, in conjunction with the Building Trades Employers' Association have designed and administered the "New York Plan for the Settlement of Jurisdictional Disputes" ("the New York Plan"). The New York Plan provides the procedure for the resolution of jurisdictional disputes on a local level between BCTC affiliates. Local 197 is affiliated with the BCTC. Local 1 was affiliated with the BCTC, but withdrew its affiliation in November 1996.

## II. BACKGROUND

### A. The Industry

The relevant industry involves the setting or installation of stone on buildings and other construction projects in the metropolitan New York area. The work is performed by two groups of construction employees: the setters who are the skilled journeymen or craftworkers responsible for the installation or setting of the stone product ("the Journeymen"), and the support personnel who bring the necessary materials to the proper place and assist the Journeymen in other ways ("Support Persons").

Since the early 1990s, Bricklayers local unions have represented the Journeymen. Local 1 in particular has represented Journeymen since the former stone setters local union was merged into it in 1994. Until 1996, plaintiff Local 197 had generally represented the Support Persons of stone setters in this area.

A similar pattern of journeymen and support personnel characterizes the installation of other masonry products. In each instance a Bricklayers' local union represents the journeymen or craftsmen. In the installation of brick and block, the support personnel are represented by local unions known as Mason Tender locals, affiliated with the Laborers International Union of North America. In the installation of tile, marble, and terrazzo, the support personnel are represented by another local of the Bricklayers International.

### B. Local 1's Resignation from the BCTC

According to the defendant, when Local 1 assumed jurisdiction over stone setters in 1994, its officers became aware that stone setters' jobs were in decline. They believed that this was due to plaintiff's representation of the setters' support personnel and felt that Local 197's contractual manning requirements and wage benefit package were excessive.

Local 1 and the Bricklayers International Union concluded that, in order to protect and preserve the work opportunities of Local 1's own stone setter members, the Local established a stone tender classification to serve as support personnel for stone setters. They did so, despite knowing that labor organizations usually respect the prior jurisdiction enjoyed by other unions.

From 1980 to 1993, the Bricklayers' New York local unions were not part of the New York BCTC. In 1993, upon the creation of Local 1 through the merger of the seven pre-existing Bricklayer locals, Local 1 reaffiliated with the BCTC. This comported with the national pattern in which many locals of all building trades Internationals either never joined the Local Councils in their area, or resigned and reaffiliated, often more than once.

The New York BCTC was one of the two local Building and Construction Trades Councils nationally to have established its own Jurisdictional Disputes Plan (the New York Plan) to resolve jurisdictional disputes among its member local unions. Under the practice and precedents of the New York Plan, the only material factor was—and is—which union occupied the "turf" first. Whether that union's actions were imposing unjustified costs upon contractors, is essentially irrelevant. Knowing that an adjudication under the New York Plan was almost certain to result in a ruling against them in any dispute with Local 197 over the support personnel for stone setters, in November 1996, Local 1 withdrew from the BCTC and, therefore, from BCTC's New York Plan. It then commenced recruiting and training stone tenders and signing collective bargaining agreements with stone contractors.

Local 197 alleges in its Fifth and Sixth Causes of Action that Local 1 threatened employers with coercive action in the event that they entered a collective agreement with, or assigned disputed work to, Local 197. In response, Local 1 asserts that is

does not seek to compel contractors to sign stone tender agreements. Rather, it has two standard agreements, one covering both setters and tenders and the other covering setters alone. If a contractor wishes to employ both Local 1 stone setters and Local 1 stone tenders, then it is offered the more comprehensive agreement. If it wishes to use Local 197 support personnel, then it can sign the Local 1 agreement covering only setters.

## C. *The Position of the Parties*

In support of its case, Local 197 relies on the BCTD's Constitutional requirements that (a) local unions affiliate with local BCTCs; (b) local unions submit jurisdictional disputes to the National Plan for resolution; and (c) there is a general obligation to adhere to the principles enunciated in the BCTD Constitution to organize tradesmen on "traditional trade or craft lines" and to protect established trade jurisdiction as historically granted and exercised by the BCTD affiliates. Local 197 also relies on the National Plan provision requiring submission in the "first instance" to a local jurisdictional plan of jurisdictional disputes (Exhibit "F" National Plan, Art. VIII, p. 25) as well as the National Plan's requirement that affiliates seek agreement by their employers to submit to the plans (Id. at Art. II, pp. 1415).

Local 197 further relies on the BCTC Constitutional requirement that local unions in the New York area aligned with BCTD affiliate with their local council and that they contain provisions in their collective bargaining agreements that signatory employers agree to submit to the New York Plan. Finally, Local 197 relies on the New York Plan provisions that govern the procedures for submission of disputes, the issuing of awards and the precedential effect of such awards. Additionally, the New York Plan prevents affiliates from entering into any agreements inconsistent with the awards and procedures of the Plan.

In response, Local 1 argues that none of the documents relied upon by the plaintiff give rise to rights which this Court can enforce. It asserts that nothing in the Constitution of the New York BCTC prohibits a member union from resigning its membership and that local unions of the Bricklayers International, and other Internationals as well, have resigned from the BCTC, reaffiliated, and withdrawn again.

Because it withdrew from the BCTC, Local 1 argues it is not subject to the New York Plan, and that nothing in the Plan purports to subject a labor organization that is a non-member of the BCTC to its provisions. At the time of Local 1's resignation, there was no outstanding New York Plan award against it specifically relating to the subject matter of this lawsuit, nor was there any pending complaint against it under the New York Plan.

With respect to the National Plan, Local 1 argues that it may be invoked only by National or International unions, and then only when the contractor whose job assignment is the source of the jurisdictional dispute has stipulated to the National Plan. Local 1's signatory contractors to the stone setter-stone tender agreement have not stipulated to the National Plan, even though the Plan provides that local unions are to secure written assent to the Plan by their signatory employers. *Id.* at Art. II, Sec. 1(a), pp. 14–15. Therefore, defendant argues, the National Plan is unavailing to resolve the jurisdictional disputes between plaintiff and defendant.

Defendant contends that the proper means to resolve this dispute is through the National Labor Relations Act, which provides a remedy for this type of situation. When a union initiates, or even threatens, economic action in connection with a jurisdictional dispute, an aggrieved party may file an unfair labor practice charge with the National Labor Relations Board. The Board must act quickly and will typically seek a Federal Court injunction under Section 10 of the Act, 29 U.S.C. § 160, within several days. Upon securing

that injunctive order, it then schedules a jurisdictional dispute hearing under Section 10(k) of the Act. 29 U.S.C. § 160(k).

According to Local 1, after its stone tenders began serving as support personnel for stone setters, Local 197 threatened economic action on various construction projects where stone tenders were working. The contractors filed unfair labor practice charges and the NLRB obtained injunction orders and scheduled Section 10(k) hearings. Local 197 then withdrew its pickets or threats and agreed not to resume them. As a result, the Board has cancelled all Section 10(k) hearings that it had scheduled.

## DISCUSSION

### III. THE BCTD CONSTITUTION AND THE NATIONAL PLAN

Plaintiff argues that Article XIII of the BCTD Constitution creates a contractual obligation on defendant to affiliate with the BCTC and thereby, the New York Plan. Plaintiff further contends that it is a third-party beneficiary of that contract and can sue to enforce those obligations. Defendant counters that Article XIII is merely a statement of BCTD policy and not a contractual mandate that is legally enforceable. Additionally, defendant contends that even if Article XIII does create contractual rights, plaintiff is not an intended beneficiary of those rights and therefore has no standing to sue for their enforcement. As for the National Plan, the defendant asserts that only National or International unions may file complaints under the National Plan, and that the Iron Workers International has chosen not to do so on the plaintiff's behalf.

### A. Article XIII of the BCTD Constitution

Article XIII of the BCTD Constitution reads as follows:

Local Unions–Affiliation Local Councils All Building and Construction Trades Local Unions of National and Interna-

tional Unions affiliated with the [BCTD] in the geographical jurisdiction of Local Building and Construction Trades Councils shall affiliate with said Local Council.

The BCTD is a Department of the AFL—CIO "composed of National and International building and construction trades unions." No local union is a member of the BCTD and many are unaffiliated with the local Building and Construction Trades Council in their locality. Although Article XIII has been part of the BCTD Constitution since 1983, no union, International or local, has sued any other union, International or local, based on another local's non-affiliation with or disaffiliation from its area Council.

According to Local 1, in instances such as this one, where the non-affiliation of a local union or the existence of a jurisdictional dispute between local unions of affiliated Internationals is brought to the attention of the BCTD President, he or she typically refers it to the affected International President or Presidents and urges them to resolve it. That was done in the present case, but no resolution was accomplished. The President of the Iron Workers has filed no internal BCTD charges or taken other action against the Bricklayers.

### B. Is Local 197 a Third–Party Beneficiary of the BCTD Constitution

To determine whether the plaintiff has standing as a third party beneficiary of a labor contract, the Court must apply New York law to the extent that it is compatible with federal labor policy. See Cement and Concrete Workers Dist. Council Welfare Fund, v. Lollo, 35 F.3d 29, 35 (2d Cir. 1994); Scanz v. New York Times, 1997 WL 250447, 156 L.R.R.M. 2774, 2778–2779 (S.D.N.Y.1997).

In New York a third party may enforce a contract if that third party is an intended beneficiary of the contract. Mortise v. United States 102 F.3d 693, 697 (2d Cir.1996); Flickinger v. Harold C. Brown

*& Co.*, 947 F.2d 595, 600 (2d Cir.1991). In order for Local 197 to be an intended third party beneficiary of the BCTD Constitution and the National Plan, it must demonstrate that the parties to the contracts intended to benefit third parties, in this case, affiliated local trade unions. The parties' intent to benefit a third party must be shown on the face of the agreement. *In re Gulf Oil/Cities Service Tender Offer Litigation*, 725 F.Supp. 712, 733 (S.D.N.Y.1989); *Scanz v. New York Times*, 1997 WL 250447, 156 L.R.R.M. 2774, 2778–2779 (S.D.N.Y.1997).

■ Local 197 argues that the BCTD Constitution intended to benefit its local unions by, *inter alia*, protecting historical or traditional trade jurisdiction, providing a means to resolve jurisdictional disputes between local unions (the National Plan), encouraging the formation of local building and construction trades councils and directing the local unions to affiliate with said local councils. In support of this assertion, Local 197 points to Article XIII which is discussed above, and the following section of the BCTD Constitution:

> All jurisdictional disputes between or among affiliated National and International Unions and their affiliated Local Unions and Employers shall be settled and adjusted according to the present plan established by the Building and Construction Trades Department [the National Plan], or any other Plan or method of procedure adopted in the future by the Department for the settlement of jurisdictional disputes. Said present plan or any other plan adopted in the future shall be recognized as final and binding upon the Department and upon all affiliated National or International Unions and their affiliated Local Unions.

BCTD Constitution, Art. X, p. 26.

The Objectives and Principles section of the BCTD Constitution includes the following, which the plaintiff claims further illustrates an intent to benefit local unions:

> To develop the organization of building and construction tradesmen "on traditional trade or craft lines;"

> to secure the adjustment of trade and jurisdictional disputes "along practical lines ... and such decisions to be final and binding on all affiliated National and International Unions and their affiliated Local Unions;"

> "to protect National or International Unions affiliated with the Department in their established trade jurisdiction ... as historically granted and conferred upon them by the American Federation of Labor and as traditionally exercised by them."

*Id.* at Art. II, Secs. 2, 6 and 12.

Plaintiff argues that Article XIII of the BCTD Constitution, which requires local unions to affiliate with local councils such as the BCTC, binds local unions for the benefit of all other local union affiliates, since it is the local affiliates that are directly affected by jurisdictional disputes.

This Court finds that local unions are merely incidental beneficiaries of the BCTD Constitution. Nothing in the BCTD Constitution demonstrates an intent to confer an enforceable right to sue upon the thousands of local unions affiliated with the fifteen International and National Unions comprising the BCTD.

The Constitution confers rights upon International and National Unions to file charges, which would include charges of breach of the BCTD Constitution, against other International and National Unions that are BCTD members. Those charges are to be heard by the Governing Board of Presidents, and penalties may be imposed. Georgine Tr. 21–22. Nothing in the Constitution empowers any union, whether International or local, to file charges or assert enforceable rights against a local union of another International. The BCTD itself has disciplinary powers, but those may be exercised only against those State and Local Councils that are themselves the creatures of the

BCTD and chartered by it. *See* BCTD Constitution at Article VII, Section 11. Nothing in the Constitution empowers the BCTD to discipline local unions chartered by the Internationals and Nationals that are BCTD members.

The same section that provides for discipline of BCTD—created State and Local Councils also empowers the Governing Board of Presidents to issue rules concerning "procedures to secure the affiliation of all local unions with Local Building and Construction Trades Councils." *See* BCTD Constitution at Article VII, Section 11. Thus the Constitution itself sets forth the means to implement the objective of Article XIII and prescribes the body authorized to take such action. The thousands of building trades local unions affiliated with BCTD Internationals are pointedly excluded from this process.

The BCTD Constitution does not leave a local such as plaintiff without recourse. Its recourse is to seek to induce its own International to take action against any other International that does not compel its own local unions to affiliate with their Local Councils.

### C. *Is Local 197 a Third–Party Beneficiary of the National Plan*

Plaintiff also argues that the National Plan was intended to bind affiliated local unions for the benefit of all other local unions similarly bound to the National Plan. The Enforcement Article of the Plan states that it "shall be a violation of [the Plan] for any Local … to enter into any agreement" that deviates from the Plan. National Plan Art. VII. The Plan also commands that no local union "shall institute or post picket lines for jurisdictional purposes." *Id.* at Art. IX Sec. 2(b). Additionally, the National Plan mandates that where there is a local plan approved by the Department, "it shall be used in the first instance to bring about an agreement, settlement or decision." *Id.* at Art. VIII Sec. 1. For the same reasons discussed in the previous section, these provisions are in-

sufficient to create third-party enforcement rights for local unions.

### IV. *THE DRYWALL CASES*

Plaintiff asserts that the BCTD constitution has already been determined by the Eastern District of New York and the Second Circuit (a) to constitute a labor contract under Section 185(a) of the NLRA Act and (b) to exist for the intended benefit of local unions. The cases in question involved a protracted jurisdictional dispute between two New York area local unions. See, *Drywall Tapers & Pointers, Local 1974 v. Local 530 of Operative Plasterers and Cement Masons Intern. Ass'n*, 1993 WL 738369, slip op. at 6, No. 81 Civ. 337, (E.D.N.Y. August 17, 1993), aff'd, 36 F.3d 235 (2d Cir.1994) ("*Drywall*"); *Drywall Tapers & Pointers, Local 1974 v. Local 530 of Operative Plasterers and Cement Masons Intern. Ass'n* ("*Drywall IV*"), 954 F.2d 69 (2d Cir.1992), *Drywall Tapers & Pointers, Local 1974 v. Local 530 of Operative Plasterers and Cement Masons Intern. Ass'n*, ("*Drywall III*"), 889 F.2d 389 (2d Cir.1989); *Drywall Tapers &and Pointers of Greater New York, Local 1974 v. Operative Plasterers' and Cement Masons' Intern. Ass'n ("Drywall II")*, 601 F.2d 675 (2d Cir.1979); and *Drywall Tapers and Pointers of Greater New York, Local 1974 v. Operative Plasterers' and Cement Masons' Intern. Ass'n of U.S. and Canada ("Drywall I")*, 537 F.2d 669 (2d Cir.1976).

These cases are the result of an historic rivalry commencing in the 1970's between two construction trade local unions regarding the preparation of drywall for painting and wallpapering. The cases were litigated by the local unions. However, the *Drywall Tapers* cases are distinguishable from this case in two regards. In those cases, both locals remained affiliated with the BCTC, and there were arbitration awards from the New York and National Plans that the plaintiff sought to enforce.

Local 197 submits that these distinctions do not render the *Drywall* cases inapplicable. Instead, the plaintiff submits that the gravamen of those cases is the enforcement of the contractual obligations of local unions to submit jurisdictional disputes to the Plans and to comply with awards rendered by those Plans. Plaintiff argues that it has been unable to get as far as the plaintiff in the *Drywall Tapers* cases because of Local 1's withdrawal from the BCTC and refusal to submit to the National Plan, but it is seeking enforcement of the same contractual obligations and therefore, the *Drywall Taper* cases are applicable to this case. That argument is without merit.

Since both local unions were direct parties to the arbitration award, and suit was brought by the victorious party, *Drywall Tapers* presents different issues than those raised by this motion. These cases do not address Article XIII of the BCTD Constitution or the standing of a local union to bring its own lawsuit to enforce that Article as a third-party beneficiary of that Constitution. To the contrary, the issue considered in the *Drywall* cases was the enforceability of arbitration Awards issued by an arbitrator having proper jurisdiction to enter the Awards.

Local 197 also urges this Court to examine the case of *Santos v. Dist. Council of New York City and Vicinity of United Bhd. of Carpenters*, 547 F.2d 197, 200–201 (2d Cir.1977) for guidance on deciding the issue of standing under an umbrella labor organization's constitution.

*Santos* grew out of an arbitration proceeding under the Internal Disputes Article of the AFL—CIO Constitution. Plaintiff in that case, Painters International, prevailed before the arbitrator who determined that the disputed work should be performed by members of local unions affiliated with the Painters International. Had the parties to the arbitration abided by the Award, plaintiffs, who were members of the local union affiliated with the Painters International, would have received those jobs. Instead, the defendant's members continued to perform the work, and plaintiffs' union, at both the local and International level, did little to enforce the Award. After years of organizational inaction, plaintiffs sued.

The Court held that individual union members had standing to sue under the AFL—CIO constitution as third party beneficiaries. The Second Circuit's decision was based on its conclusion that the complaint sufficiently alleged a breach of the duty of fair representation on the part of plaintiffs' own union.

Plaintiff submits that although it is a local union rather than an individual union member, the Santos court's analysis regarding standing is applicable to this case. It argues that the BCTD Constitution is unambiguous in its mandatory language requiring affiliation with local councils and submission to the jurisdictional dispute plans. Local 197 argues that it has suffered tangible harm as a result of Local 1's breach of the BCTD Constitution. The defendant's refusal to (a) remain affiliated with its local council, and (b) submit to the jurisdiction of the National or New York Plan, as required by the BCTD Constitution, has deprived Local 197 of the ability to have this ongoing dispute heard before the proper arbitral authorities. Plaintiff contends that the defendant's actions are a self-serving "quest for ambiguity" in order to keep the underlying jurisdictional dispute unresolved so that Local 1 can continue to assert jurisdiction over the disputed work.

The *Santos* rationale is inapplicable to Local 197, which is itself both the bargaining representative of its members and is the plaintiff in this case. The plaintiff can hardly assert that it is entitled to bring this action because it has somehow breached its duty of fair representation and that, as a result of its own breach, it suffered irreparable harm.

## V. *THE BCTC CONSTITUTION AND AWARD 269*

### A. *The BCTC Constitution and the New York Plan*

■ Plaintiff argues that as a member of the BCTC, it is clearly an intended beneficiary of the BCTC Constitution and the New York Plan. Certainly one of the purposes of both the BCTC Constitution and the New York Plan is to establish a means for its affiliated local unions to resolve jurisdictional disputes. The BCTC Constitution requires that precise language requiring that disputes go before the New York Plan be incorporated in all collective bargaining agreements:

> District councils and all local unions affiliated with the BCTC shall incorporate in all collective bargaining agreements without change the following provisions: "All jurisdictional disputes between or among building and construction trades unions and employers, parties to this agreement, shall be settled and adjusted according to the present plan established by the New York Plan for the Settlement of Jurisdictional Disputes or, in the absence of such plan, any other plan or method or procedure that may be adopted in the future by the Building and Construction Trades Department of the AFL—CIO. Decisions rendered shall be final, binding and conclusive on the employer and union parties to this agreement."

BCTC Constitution, Art. XV Sec. 2.

Local 1 argues that despite the use of the word "shall," the above provision can only be characterized as precatory, like the similar use of "shall" in Article XIII of the BCTD Constitution. The Court finds the defendant's argument persuasive in light of the fact that the BCTC cannot mandate the terms of collective bargaining agreements which are the product of negotiations between the local unions and employers.

Plaintiff also claims that defendant has breached the BCTC Constitution and the New York Plan by its withdrawal from the BCTC.

The BCTC Constitution provides that "[a]ll building and construction trades local unions of the national and international unions affiliated with the BCTD within the geographical jurisdiction of the BCTC shall affiliate with the BCTC." *Id.* Art. III, Sec. 2. Local 1 is within the geographic jurisdiction of the BCTC and it is an affiliate of an international union affiliated with the BCTD. However, Local 1 withdrew from the BCTC on or about November 4, 1996 specifically to avoid the potential of Local 197 filing a grievance under the New York Plan.

The New York Plan is binding on and applies to all affiliates of the BCTC. The New York Plan provides that decisions rendered pursuant to the Plan's arbitration proceedings govern "the awarding of work of the kind in question on all future jobs." New York Plan, Art. V, Sec. 3(i). The Plan also provides that it is a violation of the Plan for any entity covered by the Plan to establish any jurisdiction which deviates from the spirit, intent, procedures or decisions of the Plan. Id. Art. VI, Sec. 3(a).

Local 1 was affiliated with the BCTC when it commenced its efforts to create the Stone Tender title and withdrew from the BCTC to avoid a New York Plan grievance and decision. *See,* Plaintiffs Statement Pursuant to Rule 56.1, at ¶¶ 40, 55 and 56.

The defendant argues that because the New York Plan applies only to affiliated or constituent locals of the New York BCTC, it ceased to be bound by the New York Plan in November 1996. Similarly, by disaffiliating from the New York BCTC, defendant ceased to be bound by that Council's Constitution. Therefore, the causes of action purporting to rest upon the BCTC Constitution and the New York Plan are derivative claims dependant upon the BCTD Constitution and not causes of action independently founded in either the

New York Plan or the BCTC Constitution. Since the claim under Article XIII of the BCTD Constitution falls, all remaining claims fall as well.

### B. *Award 269–9c*

In March 1996, Local 197 won an Award (Award 269–9c) from the New York Plan for the Settlement of Jurisdictional Disputes for the work of tending to the Stone Setter/Mason including the unloading, handling and installation of cut stone for use as pavers, benches and curbs and other site work. Such work is commonly referred to as "site work." The underlying arbitration in that case was between Local 197 and a local of the Mason Tenders union. Plaintiff argues that before Local 1 withdrew from the BCTC, it failed to comply with Award 269–9c on "work of the kind in question," and thereby violated a decision of the Plan, as well as the Plan itself. Plaintiff further asserts that Local 1's creation of a title designed specifically to overlap with the recognized jurisdiction of another local violates the Plan's prohibition against establishing a jurisdiction inconsistent with a decision of the Plan. Finally, plaintiff argues that Local 1's withdrawal from the BCTC to avoid application or either the decision or procedures of the Plan, violates the spirit and intent of the Plan. Exhibit "G", New York Plan, Art. VI, Sec. 3(a).

Defendant argues that the New York Plan Award 269–9C has no relevance to this case because Local 1 was not a party, did not appear in the proceeding, received no notice of its pendency, indeed, no local union affiliated with the Bricklayers International was served or participated.[1] Equally important, when plaintiff sued to enforce the Award, it sued the Mason Tenders only. It did not include Local 1 in its enforcement proceeding, which the defendant argues is a clear recognition by the plaintiff that the Award ran only against the Mason Tenders, the party to the arbitration proceeding. The defendant asserts that it did not withdraw from the BCTC to avoid the force of Award 269–9, because it never regarded that Award as binding upon it. Pl.Ex. N, No. 11.

### VI. *PLAINTIFF'S STATE LAW CLAIMS*

Plaintiff's Fifth and Sixth Claims allege the state law torts of intentional interference with prospective and actual contractual relations. Plaintiff's pendent state claims cannot proceed because the District Court's subject matter jurisdiction is based upon an unsustainable federal claim, and the Court declines to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well"); *Tops Markets, Inc. v. Quality Markets, Inc.,* 142 F.3d 90, 102–03 (2d Cir.1998); *Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867 (2d Cir.1998).

Moreover, plaintiff's Fifth and Sixth Claims are preempted by the National Labor Relations Act and the exclusive jurisdiction of the National Labor Relations Board. Plaintiff alleges that Local 1 engaged in (1) threatening and coercing employers to refrain from entering collective bargaining agreements with plaintiff; (2) threatening and coercing employers who have collective bargaining agreements with plaintiff not to adhere to those agreements; and (3) threatening and coercing employers to assign work in dispute to Local 1 members rather than to Local 197 members.

The Supreme Court has provided substantial guidance to the courts of the United States in deciding preemption

---

1. The Mason Tenders did not appear either. The determination by the employer associa-

tion to which the New York Plan delegates full decisional power was made on default.

questions in the context of the federal labor laws. The primary test for federal preemption in the labor area was enunciated in *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). There the Supreme Court held that "(w)hen an activity is arguably subject to § 7 or § 8 of the (NLRA), the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *Id.* at 245, 79 S.Ct. at 779.

The courts have, however, refused to apply the *Garmon* test in literal or mechanical fashion, particularly in cases, such as this one, where the challenged state law is of general application. "The Supreme Court has stated that inflexible application of the (Garmon) doctrine is to be avoided, especially where the State has a substantial interest in regulation of the conduct at issue and the State's interest is one that does not threaten undue interference with the federal regulatory scheme." *Farmer v. United Broth. of Carpenters and Joiners of America, Local 25,* 430 U.S. 290, 302, 97 S.Ct. 1056, 1064, 51 L.Ed.2d 338 (1977). Instead, "the decision to pre-empt ... state court jurisdiction over a given class of cases must depend upon the nature of the particular interests being asserted and the effect upon the administration of national labor policies" of permitting the state court to proceed. *Vaca v. Sipes,* 386 U.S. 171, 180, 87 S.Ct. 903, 911, 17 L.Ed.2d 842 (1967).

■ The *Garmon* Court indicated that a finding of preemption requires not just a finding of arguable federal prohibition, but also consideration of whether the case touches "interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." 359 U.S. at 244, 79 S.Ct. at 779. Subsequent decisions of the Supreme Court have explained that this latter deter-

mination depends on two factors. First, the court must consider the significance of the state interest in protecting the citizen from the challenged conduct. Second, the court should consider the degree of similarity between the controversy presented to the state court and that which would have been presented to the NLRB had the plaintiff elected to start its action there. *See Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters,* supra, 436 U.S. at 196–97, 98 S.Ct. at 1757, *Farmer v. Carpenters Local 25,* supra, 430 U.S. at 298–99, 97 S.Ct. at 1062.

■ Applying these factors in the context of the instant case, the Court concludes that a finding of preemption is unavoidable here because of the close relationship between the controversy as it is presented under state law and as it would have been presented under federal law.

Plaintiff's Fifth and Sixth Claims virtually track the provisions of the NLRA and that adjudicating these claims in a civil lawsuit could conflict with the carefully designed legislative scheme for resolution by the NLRB of jurisdictional disputes accompanied by threats against employers.

Section 8(b)(4)(D) of the Act, 29 U.S.C. § 158(b)(4)(D), makes it an unfair labor practice for a union "to threaten, coerce, or restrain any person engaged in commerce ... where an object thereof is"

(D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work.

Plaintiff's state law claims assert that the defendant threatened employers with coercive action for the purpose of intentionally interfering with Local 197's con-

tracts with those employers or intentionally interfering with Local 197's prospective business relations with employers.

Both a state claim for tortious interference with contract and a federal claim under Sections 8(b)(4)(B) challenge the object of the Local 1's activity with respect to the disputed work. *Compare Sears, Roebuck & Co. v. San Diego County District Council of Carpenters*, supra, 436 U.S. at 198, 98 S.Ct. at 1758 (declining to find preemption on the ground that plaintiff's state claim "only challenged the location of the picketing; whether the picketing had an objective proscribed by federal law was irrelevant to the state claim").

Courts generally have dismissed similar claims on preemption grounds. *See Local 926, Intern. Union of Operating Engineers v. Jones*, 460 U.S. 669, 103 S.Ct. 1453, 75 L.Ed.2d 368 (1983) (claim against union for coercing employer to breach employment contract preempted by NLRA); *Board of Trustees of Sheet Metal Workers Local Union No. 137 Ins. v. Silverstein*, 1995 WL 404873 (S.D.N.Y.1995) (tort claim against union for engaging in concerted action which interferes with an employer's contractual relations with customers preempted by NLRA); *Billy Jack for Her, Inc. v. New York Coat, Suit, Dress, Rainwear & Allied Workers' Union, ILGWU, AFL–CIO, Local 1–35*, 511 F.Supp. 1180 (S.D.N.Y.1981) (state law claim of tortious interference with plaintiff's contract with another union preempted by NLRA); *In re Sewell*, 690 F.2d 403 (4th Cir.1982) (state law claim against employer for tortious interference with contracts dismissed under *Garmon* preemption).

The present case is distinguishable from those cases where the Supreme Court has carved out an "exception" to Garmon's "arguably prohibited" approach. *See*, e.g., *Farmer v. Carpenters Local 25*, supra, 430 U.S. at 304, 97 S.Ct. at 1065 (no preemption where complaint alleged intentional infliction of mental distress) (while challenged conduct was arguably prohibited by NLRA, action before NLRB would focus on whether statements were made with discriminatory intent, and not on whether statements were made with intent and effect of causing emotional distress); *Linn v. United Plant Guard Workers of America, Local 114*, 383 U.S. 53, 63, 86 S.Ct. 657, 663, 15 L.Ed.2d 582 (1966) (no preemption where complaint alleged libel) (while challenged activity was arguably prohibited by NLRA, action before NLRB would focus on coercive or misleading nature of the statements rather than their defamatory quality).

"Where conduct is arguably, but not necessarily, prohibited by federal labor law, preemption is required if application of state law might cause a different accommodation to be struck than that established by the federal statutory scheme. Plainly, there need be no concern that state law might be applied so as to disturb significantly the balance struck by Congress unless there is a substantial similarity between the two controversies as they would be respectively presented to the state court and the NLRB." *Billy Jack*, 511 F.Supp. 1192. This case involves just such a substantial similarity: the state court action and the potential NLRB claim attack Local 1's actions in the same fashion, albeit on different legal theories.

## VII. PLAINTIFF'S SECTION 303 CLAIM

Plaintiff, realizing that its Fifth and Sixth Claims are preempted, now seeks to transform those claims into federal statutory claims under Section 303 of the LMRA, 29 U.S.C. § 187, which provides:

> Whoever shall be injured in his business or property by reason of [an unfair labor practice under section 8(b)(4) of the NLRA] may sue therefor in any district court of the United States . . . and shall recover the damages by him sustained and the cost of the suit.

29 U.S.C. § 187(b) (1982). The language "by reason of" creates a standing requirement. *See Starks v. Perloff Bros., Inc.,*

760 F.2d 52, 55 (3d Cir.1985). The question as to whether a union has standing to maintain an action under this section aside, *see Fulton v. Plumbers and Steamfitters,* 695 F.2d 402, 407 (9th Cir.1982), cert. denied, 464 U.S. 913, 104 S.Ct. 273, 78 L.Ed.2d 254 (1983) the plaintiff's acknowledgment that the defendant's "behavior doesn't constitute an unfair labor practice" Tr. at 33 [2], rendered that statute inapplicable in any event. It might also be noted that a § 303 claim was not pleaded and was raised for the first time in the plaintiff's submission in opposition to the defendant's motion for summary judgment, the propriety of which has been rejected. *See Beckman v. United States Postal Serv.,* 79 F.Supp.2d 394, 408 (S.D.N.Y.2000).

## CONCLUSION

In the final analysis, the plaintiff's desire for a resolution of its grievance against the defendant is frustrated by the refusal of its own International Union to bring a proceeding against the International of the defendant's local union as provided for in the Constitution of the BCTD. The Court cannot compel the plaintiff's International to do so. For that and the other reasons discussed, the plaintiff's motion for summary judgment is denied and the defendants motion for summary judgment is granted.

SO ORDERED.

---

**2.** "Tr" refers to the transcript of the oral argument.